## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

GUOLIANG MA, ELIZABETH PEGUERO,
SHARON MANIER, and KIN FAI LAU,
on behalf of themselves and others similarly situated,

                  Plaintiffs,                         Case No. 16-CV-7102

        v.

HARMLESS HARVEST, INC.

                  Defendant.

-------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086))
Anne Seelig (AS 3976)
Angela Kwon (AK 1396)
Taimur Alamgir (TA 9007)
30 East 39th Street, Second Floor
New York, New York 10016
Tel: (212) 465-1180
Fax: (212) 465-1181

# Table of Contents

Page

**PRELIMINARY STATEMENT** ...................................................................................1

    A.    TERMS OF THE SETTLEMENT .....................................................3

    B.    THE CLASS NOTICE PROGRAM ................................................4

**LEGAL ARGUMENT**...............................................................................................5

    A.    STANDARD OF REVIEW FOR PRELIMINARY SETTLEMENT
            APPROVAL AND CLASS CERTIFICATION FOR SETTLEMENT
            PURPOSES.......................................................................................5

    B.    CLASS CERTIFICATION SHOULD BE GRANTED FOR SETTLEMENT
            PURPOSES UNDER RULE 23.......................................................7

        1. The Rule 23(a) Factors Are Met ......................................................7
             a. Numerosity...........................................................................7
             b. Commonality.........................................................................8
             c. Typicality .............................................................................9
             d. Adequacy .............................................................................10

        2. Rule 23(b)(2) is Satisfied ................................................................11

    C.    THE SETTLEMENT IS SUBSTANTIVELY FAIR UNDER THE
            *GRINNELL* FACTORS AND SHOULD BE APPROVED .................................12

        1. The Complexity, Expense, and Likely Duration of the Litigation ..................12
        2. The Reaction of the Class to the Settlement ......................................13
        3. The Stage of Proceedings and the Amount of Discovery Completed .............14
        4. The Risks of Establishing Liability and Damages ..............................15
        5. The Risk of Maintaining Class Action Status Through Trial ..........................15
        6. The Ability of Defendant to Withstand a Greater Judgment ..........................16
        7.  The Range of Reasonableness of the Settlement in Light of the Best
             Possible Recovery and All the Attendant Risks of Litigation ........................17

    D.    THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND
            DUE PROCESS AND SHOULD BE APPROVED.............................................18

        1. The Proposed Notice Program is Adequate ......................................18

i

      2.  The Form and Content of the Class Notice is Adequate .................................. 21

E.      THE COURT SHOULD APPOINT SETTLEMENT CLASS COUNSEL .......... 22

F.      THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE ................... 22

**CONCLUSION** .................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ................................................................................................7

*Banyai v. Mazur,*
   No. 00 Civ. 9806, 2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) .............................15

*Bernhard v. T.D. Bank, NA.,*
   No. 08-4392, 2009 WL 3233541 (D.N.J. Oct. 5, 2009) .........................................6

*Bezdek v. Vibram USA, Inc.,*
   809 F.3d 78 (1st Cir. 2015) ...................................................................................16

*Bodon v. Domino's Pizza, LLC,*
   No. 09-CV-2941 (SLT), 2015 WL 588656 (E.D.N.Y. Jan. 16, 2015) ...................17

*Brazil v. Dole Packaged Foods, LLC,*
   No. 12-CV-01831-LHK, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) ...................16

*Brown v. Kelly,*
   609 F.3d 467 (2d Cir. 2010) ....................................................................................9

*Carlough v. Amchem Products,*
   158 F.R.D. 314 (E.D. Pa. 1993) ...........................................................................19

*Charron v. Pinnacle Grp. N.Y. LLC,*
   874 F. Supp. 2d 179 (S.D.N.Y. 2012) ...................................................................16

*Charron v. Wiener,*
   731 F. 3d 241 (2d Cir. 2013) .................................................................................12

*City of Detroit v. Grinnell Corp.,*
   495 F. 2d 448 (2d Cir. 1974) ................................................................12, 14, 16, 18

*Clark v. Ecolab Inc.,*
   No. 07 Civ 8623 (PAC), 2010 WL 1948198 (S.D.N.Y. May 11, 2010) .................6

iii

*In re Cmty. Bank of N. Virginia*,
　418 F.3d 277 (3d Cir. 2005)...................................................................................7

*Consol. Rail Corp. v. Town of Hyde Park*,
　47 F.3d 473 (2d Cir. 1995)....................................................................................8

*Dupler v. Costco Wholesale Corp.*,
　705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...............................................................13

*Gen Tel. Co. of Sw. v. Falcon*,
　457 U.S. 147 (1982)............................................................................................16

*In re Global Crossing Securities & ERISA Litig.*,
　225 F.R.D. 436 (S.D.N.Y 2004) ...........................................................................9

*In re Initial Pub. Offering*,
　243 F.R.D. 79 (S.D.N.Y. 2007) .............................................................................6

*Jacob v. Duane Reade, Inc.*,
　289 F.R.D. 408 (S.D.N.Y. 2013) ........................................................................10

*Jermyn v. Best Buy Stores, L.P.*,
　No. 08 Civ. 00214(CM), 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010)................20

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
　09-cv-7670, U.S. Dist. LEXIS 157910 (N.D. Ill. Nov. 30, 2011) ...................19, 20

*Manley v. Midan Rest., Inc.*,
　14 Civ. 1693 (HBP), 2016 WL 1274577 (S.D.N.Y. Mar. 30, 2016)....................13

*Mazon v Wells Fargo Bank, NA.*,
　CIV. 10-700 .........................................................................................................5

*McReynolds v. Richards-Cantave*,
　588 F.3d 790 (2d Cir. 2009)................................................................................12

*In re Med. X-Ray Film Antitrust Litig.*,
　No. CV-93-5904, 1998 WL 6615615 (E.D.N.Y. Aug. 7, 1998) ...........................15

*Meredith Corp. v. SESAC, LLC*,
　87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) ...........................................................12

*Mills v. Capital One, N.A.*,
　No. 14 CIV 1937 HBP, 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) .................16

iv

*Mirfasihi v. Fleet Mortg. Corp.*,
 356 F.3d 781 (7th Cir. 2004) ................................................................19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950).............................................................................18

*In re NASDAQ Market-Makers Antitrust Litig.*,
 176 F.R.D. 99 (S.D.N.Y. 1997) ..............................................................6

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
 2013 U.S. Dist. LEXIS 179340 (E.D.N.Y. Dec. 13, 2013) ....................12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
 986 F. Supp. at 244. ..............................................................................14

*In re Playmobil Antitrust Litig.*,
 35 F. Supp. 2d 231 (E.D.N.Y. 1998) .......................................................9

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
 177 F.R.D. 216 (D.N.J. 1997)...............................................................19

*Saltzman v. Pella Corp.*,
 257 F.R.D. 471 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010), *cert.
 denied*, 131 S. Ct. 998 (2011) ..............................................................20

*Shahriar v. Smith & Wollensky Rest. Group, Inc.*,
 659 F.3d 234 (2d Cir. 2011).....................................................................7

*In re Sinus Buster Products Consumer Litig.*,
 No. 12-CV-2429 (ADS)(AKT), 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ....................16

*Sofran v. LaBranche & Co., Inc.*,
 220 F.R.D. 398 (S.D.N.Y. 2004) ...........................................................11

*Tiro v. Public House Invs. LLC*,
 No. 11 Civ. 7679 (CM), 2013 WL 2254551 (S.D.N.Y. May 22, 2013)......................7

*Viafara v. MCIZ Corp.*,
 No. 12 Civ. 7452 (RLE), 2014 WL 1777438 (S.D.N.Y. May 1, 2014)..................16

*In re Vivendi Universal, S.A.*,
 242 F.R.D. 76 (S.D.N.Y. 2007) .............................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S. Ct. 2541 (2011)........................................................................8, 11

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)................................................................7

*Willix v. Healthfirst, Inc.*,
    No. 07-cv-1143, 2011 WL 754862 (E.D.N.Y. Feb 18, 2011) ...............................15

*Zeltser v. Merrill Lynch & Co., Inc.*,
    No. 13 Civ. 1531(FM), 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014)..................15

**Other Authorities**

Fed. R. Civ. P. 23(a)(4)................................................................................10

Fed. R. Civ. P. 23(b)...................................................................................7

Federal Rule of Civil Procedure 23(a) and (b)(2)........................................................2

Federal Rule of Civil Procedure 23(e).................................................................3

Proposed Notice Program Satisfies Rule 23..............................................................18

Rule 23 .......................................................................................... *passim*

Rule 23(a)..................................................................................7, 8, 9, 10

Rule 23(b)(2)......................................................................................7, 11

Rule 23(b)(3)....................................................................................16, 19

Rule 23(c)(1)(B)......................................................................................22

Rule 23(c)(2)........................................................................................21

Rule 23(c)(2)(B)......................................................................................18

Rule 23(c)(3)........................................................................................21

Rule 23(g)...........................................................................................22

Rule 23(g)(1)(A)......................................................................................22

Rule 26(f)...........................................................................................13

(www.couponmarketinglitigation.com).................................................................19

<u>**PRELIMINARY STATEMENT**</u>

Plaintiffs Guoliang Ma, Elizabeth Peguero, Sharon Manier, and Kin Fai Lau ("Plaintiffs") hereby move pursuant to Federal Rule of Civil Procedure ("Rule") 23 for preliminary approval of the Class Action Settlement Agreement ("Settlement") (attached as Exhibit A to the Declaration of C.K. Lee in Support of Plaintiffs' Motion for Preliminary Settlement Approval ("Lee Decl.")) entered into with Defendant Harmless Harvest, Inc. ("Defendant" or "Harmless Harvest"), in the above-captioned matter (subsequently referenced herein as the "Action"). As is more fully set forth herein, Plaintiffs believe that the Settlement satisfies Rule 23 and is fair, reasonable, and adequate, and therefore should be preliminarily approved.

The Settlement provides substantial injunctive benefits and specifically remedies Harmless Harvest's allegedly deceptive labeling and advertisement of Harmless Harvest coconut water products. The Settlement resolves the claims alleged in the Complaint and includes all persons throughout the United States who made retail purchases of one or more of Harmless Harvest's coconut water products (the "Products") in the United States at any time from September 30, 2011 through the date of Preliminary Approval ("Class Period") (which class of purchasers hereinafter is referred to as the "Class," "Settlement Class," or "Settlement Class Members").

The Settlement provides to the Class solely injunctive relief in the form of labeling changes and ongoing third-party monitoring of the accuracy of Harmless Harvest's product labels. Defendant has agreed to pay attorneys' fees in the amount of $575,000, which amount includes incentive awards to the Named Plaintiffs of $20,000 in total. Defendant has agreed to

1

pay up to $350,000 in claims administration fees and notice costs. In addition to the payment of attorneys' fees and costs, incentive awards, and administration and notice fees, Defendant has agreed to remove the allegedly false or misleading statements of "100% Organic" and "Raw" from the Products' packaging, of which Plaintiffs complained in their Complaint. Defendant has also agreed to engage an independent third-party consultant for a period of 2 years from the Effective Date of the Settlement, who will review the Product labels for ongoing accuracy and will provide reports as to the accuracy to Class Counsel. The cost of the consulting fees for the consultant will be borne by Harmless Harvest.

Plaintiffs believe that the Settlement provides an excellent recovery for Settlement Class Members and falls well within the range of reasonableness, such that preliminary approval is warranted. The Settlement Agreement was the product of intense, arms-length negotiations involving numerous discussions among experienced and informed counsel on both sides and Cathy Yanni, a well-respected JAMS mediator with substantial experience handling class actions involving consumer claims and food products. The parties attended a professional but contentious mediation with Ms. Yanni at JAMS on June 7, 2016, which lasted over eight hours. The parties did not reach a mediated resolution of the claims in the Action but were able to agree on the terms of the Settlement Agreement after several months' subsequent negotiation. The Settlement Agreement terms are fair, reasonable, and adequate and allow both sides to avoid the uncertainties, time, and expenses of protracted class litigation.

Accordingly, Plaintiffs seek entry of an Order in the form attached to Plaintiffs' Notice of Motion as Exhibit A that: (1) preliminarily certifies the Class under Federal Rule of Civil Procedure 23(a) and (b)(2) for settlement purposes only; (2) appoints Plaintiffs to represent the

Class; (3) appoints Class Counsel to represent the Class; (4) preliminarily approves this Settlement under Federal Rule of Civil Procedure 23(e) for purposes of issuing Class Notice; (5) approves the timing, content, and manner of the Class Notice; (6) appoints EPIQ Systems as the Settlement Administrator; (7) enjoins the commencement or continued prosecution by any Releasing Party of any Released Claim against any Released Party and of any Related Action; (8) schedules the Fairness Hearing; and (9) makes such orders as are necessary and appropriate to effectuate the terms and conditions of this Settlement.

## A.     Terms of the Settlement

Under the terms of the Settlement, Defendant agrees to substantial injunctive provisions that remove the labeling and advertising at issue. Lee Decl. Ex. A at ¶5. Defendant has, pursuant to the Settlement, already removed all statements from the Harmless Harvest Products' packaging claiming the Products are "100% Organic" and "Raw."  Pursuant to the Settlement Agreement, Harmless Harvest agrees that such changes will remain in effect after the Settlement Agreement's Effective Date.  Moreover, the Parties have agreed to engage Sandy Mays of Wolf DiMatteo & Associates as an independent third party consultant, and she will review, for a period of 2 years from the Settlement Agreement's Effective Date, labels for each current flavor of coconut water and each new flavor of coconut water that is introduced to market.  Ms. Mays is the Managing Partner of Wolf DiMatteo & Associates.  She manages organic compliance services and has over 20 years of experience in organic production and marketing.  Ms. Mays works with businesses across the country to oversee the organic certification of products, source organic ingredients, and develop organic system plans.  Ms. Mays is completely independent of both Plaintiffs and Defendant.  Ms. Mays shall review Harmless Harvest's product labels for

ongoing accuracy and provide reports as to the accuracy of the labels (including copies of such labels) to Class Counsel. The cost of the review will be borne by Harmless Harvest.

The injunctive relief serves as full consideration for dismissal of this action against Defendant. In exchange, Plaintiffs, on behalf of themselves and the Class, have agreed to provide Harmless Harvest with a full release of their legal claims in the lawsuit. *Id.* at ¶8.

Additionally, Defendant has agreed to pay Attorneys' Fees and expenses of $575,000 (the "Fee Award"), subject to Court approval. *Id.* at ¶10. Class Counsel will separately move for approval of these attorneys' fees and expenses prior to Final Approval of the Settlement. *Id.*

Finally, Defendant has agreed to pay the proposed Class Representatives, Guoliang Ma, Elizabeth Peguero, Sharon Manier, and Kin Fai Lau, an aggregate Incentive Award for their efforts in this litigation and the risks they assumed in a total amount not to exceed $20,000, as part of the Fee Award. The Incentive Award is subject to approval by this Court. *Id.* at ¶10.1. Class Counsel submits that the Settlement and requested awards are fair, adequate, and reasonable and should be preliminarily approved.

**B.      The Class Notice Program**

The Settlement Agreement sets forth parameters of a comprehensive notice program, for which the parties request that EPIQ Systems be approved as Settlement Administrator.

The Notice program – which shall provide Settlement Class Members with all information pertinent to their participation in (or opting out of) the settlement – shall commence following the Preliminary Approval Order, and will be effectuated by the Settlement Administrator across a variety of media, including an array of national publications that adequately cover Harmless Harvest consumers as necessary to satisfy to the Court that notice has

been adequately achieved. A copy of the proposed Notice program is attached as Exhibit B to the Lee Declaration. Specifically, the Notice program provides that the Settlement Administrator will publish the Notice on a one-time basis in People Magazine, a national weekly publication with a circulation of 3,400,000, as a 1/3 page black and white advertisement. To supplement the print publication notice, the Settlement Administrator has designed a robust internet-based notice plan that includes impressions of targeted internet banner advertisements and keyword search advertising through popular search engines and websites – Conversant Ad Network, Facebook, and Yahoo Ad Network.

In addition to the publication of Notice in print media and internet-based notice, the Settlement Administrator will establish both a website and a toll-free number dedicated to this settlement.

**LEGAL ARGUMENT**

**A.    Standard of Review for Preliminary Settlement Approval and Class Certification for Settlement Purposes**

Plaintiffs move under Fed. R. Civ. P. 23 for preliminary approval of the Settlement and certification of the Settlement Class for settlement purposes only. Review of a proposed class action settlement is a two-step process: (1) preliminary approval, and (2) a subsequent fairness hearing. *Mazon v Wells Fargo Bank, NA.*, CIV. 10-700 RBK/KMW, 2011 WL 6257149, at *1 (D.N.J. Dec. 14, 2011).[1] The Manual for Complex Litigation describes this process as follows:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs,

---

[1] Unless otherwise noted, all citations are omitted and emphasis added.

motions, or informal presentations by parties . . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and date of the fairness hearing.

Manual for Complex Litigation (Fourth) § 21.632 (2008). Preliminary approval is not binding and should be granted so long as the settlement is not obviously deficient. *Bernhard v. T.D. Bank, NA*., No. 08-4392 (RBK/AMD), 2009 WL 3233541, at *1 (D.N.J. Oct. 5, 2009).

On preliminary approval, the Court does not make a full and final determination regarding the procedural and substantive fairness and adequacy of the settlement terms, but rather "makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *In re Initial Pub. Offering*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007). "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *Id.* (internal quotations omitted) (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). Further, the Court should accord some deference to the terms of a settlement negotiated at arms-length; "[i]n evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel, after meaningful discovery." *Clark v. Ecolab Inc*., No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010). Notably, "courts often grant

preliminary settlement approval without requiring a hearing or court appearance." *Tiro v. Public House Invs. LLC*, No. 11 Civ. 7679 (CM), 2013 WL 2254551, at *1 (S.D.N.Y. May 22, 2013).

In light of this public policy in favor of settlement generally and because this Settlement meets the Rule 23 requirements, the Settlement should be approved, and the Settlement Class should be certified.

**B.      Class Certification Should Be Granted For Settlement Purposes Under Rule 23**

Class certification under Rule 23 has two primary components. First, the party seeking class certification must first establish the four requirements of Rule 23(a): "(1) numerosity ('a class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequate representation (representatives 'will fairly and adequately protect the interests of the class')." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Second, the Court must find that the Class fits within one of the three categories of class actions set forth in Fed. R. Civ. P. 23(b). *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 302 (3d Cir. 2005). In the present case, Plaintiffs seek certification under Rule 23(b)(2).

As discussed below, all the Rule 23 requirements are met.

**1.      The Rule 23(a) Factors Are Met**

**a.      Numerosity**

There can be no doubt that joinder of all potential Settlement Class Members in this action would be impracticable. In the Second Circuit, "numerosity is presumed where a putative class has forty or more members." *Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d

234, 252 (2d Cir. 2011) (quoting *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).  Here, the proposed Settlement Class consists of individuals in the United States who purchased at least one Harmless Harvest coconut water product since September 30, 2011, potentially comprising millions of consumers.

> **b.     Commonality**

Rule 23(a) requires the existence of questions of law or fact common to the class. Questions are typically common to the class if class members' claims "depend upon a common contention" that is "of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Here, the Settlement Class Members share common issues of law and fact. At any given time during the Class Period, the Harmless Harvest coconut water products may have contained the representations that they were "100% Organic" or "Raw" prior to Harmless Harvest's decision to revise the Products' labels and, as a result, Class Members could have been exposed to the same alleged misrepresentations.

Questions of law and fact, such as the following, are common to all Settlement Class Members:

(a)     whether Defendant misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling, and sale of the Harmless Harvest Products;

(b)     whether Defendant represented that Harmless Harvest Products have characteristics, benefits, uses, or qualities that they do not have;

(c)     whether Defendant's acts and practices in connection with the promotion, marketing, advertising, packaging, labeling, distribution, and sale of Harmless Harvest's Products violated deceptive trade practices statutes or laws;

(d)     whether Defendant's conduct, as set forth herein, injured members of the Class and whether they have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be provided.

In other words, Plaintiffs can prove that Harmless Harvest engaged in the misconduct that they have alleged, or they cannot, but the evidence and governing law will not vary from plaintiff to plaintiff. In light of these common questions of fact and law, commonality is satisfied.

### c.     Typicality

Typicality for purposes of Rule 23(a) is satisfied where "the representative plaintiff's claims are based on the same legal theory and arise from the same practice or course of conduct as the other class members." *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998). "[W]hen the same alleged unlawful conduct [is] directed at … both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying claims." *In re Global Crossing Securities & ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y 2004). "The commonality and typicality requirements often tend to merge into one another so that similar considerations animate analysis of both." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010).

Here, Plaintiffs have alleged that Harmless Harvest deceived customers into purchasing Harmless Harvest coconut water Products by falsely advertising that such Products were 100% Organic or Raw. The claims of other members of the Settlement Class − all consumers of

Harmless Harvest's Products – arise out of the same alleged misconduct by the same Defendant and are based on overlapping legal theories. Moreover, there are no individual facts unique to any of the proposed Class Representatives that would make their claims atypical.

###### d. Adequacy

The final element under Rule 23(a) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether a plaintiff is an adequate class representative, courts in the Second Circuit evaluate whether (1) class counsel is "qualified, experienced and generally able" to litigate the case; and (2) plaintiff's interest are not antagonistic to the interest of the other class members. *See In re Drexel Burnham Lambert Grp*., Inc., 960 F.2d 285, 291 (2d Cir. 1992); *Jacob v. Duane Reade, Inc*., 289 F.R.D. 408, 418 (S.D.N.Y. 2013).

Here, it is beyond dispute that Class Counsel is amply qualified and experienced to pursue claims and negotiate settlement in this class action. C.K. Lee of Lee Litigation Group, PLLC has extensive experience in class action proceedings in this District and the Second Circuit and already has devoted substantial time, resources, and leadership to the Action. The qualifications of Class Counsel are set forth in greater detail in the Lee Declaration filed contemporaneously herewith.

Nor is there any conflict between the proposed class representatives and the class. Indeed, Plaintiffs are typical consumers who purchased Harmless Harvest Products during the Class Period and share the same interests as other Class Members in seeking to have the allegedly deceptive advertising and labeling of the Products stopped and to have the Products' labels independently monitored for accuracy on an ongoing basis. There also is no evidence of

collusion among the parties bearing on the comparative interests of the Class and the Plaintiffs. *See Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 403 (S.D.N.Y. 2004). The Settlement Agreement provides that the payment of any attorneys' fees, expenses, and costs to Class Counsel is contingent upon the Final Approval of the Court, and no portion of the consideration reverts to Harmless Harvest unless the entire Settlement Agreement terminates pursuant to the agreement's terms. These facts further support a finding that representation of the Class is fair and adequate.

Accordingly, both prongs of the adequacy inquiry are satisfied.

## 2.    Rule 23(b)(2) Is Satisfied

Rule 23(b)(2) is satisfied when the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); see *Dukes*, 131 S. Ct. at 2557 ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted," and thus "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."). This standard for awarding class-wide injunctive relief is met here. Plaintiffs challenge Defendant's conduct of mislabeling their coconut water products as "100% Organic" and "Raw," which affects every member of the Settlement Class. The labeling changes described in the Settlement Agreement will apply to all members of the Class. Thus, class certification under Rule 23(b)(2) is appropriate. As the Hon. John Gleeson of the U.S. District Court for the Eastern District of New York recently held in certifying an injunctive class under Rule 23(b)(2), "[b]ecause all the members of the injunctive relief class were subject to the same rules, and because the relief afforded by that class is a change to those rules, the class satisfies

the requirement that defendants have 'acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2013 U.S. Dist. LEXIS 179340, 83 (E.D.N.Y. Dec. 13, 2013) (quoting Fed. R. Civ. P. 23(b)(2)).

**C.** **The Settlement is Substantively Fair Under the *Grinnell* Factors And Should Be Approved**

To demonstrate the substantive fairness of a settlement agreement, a party must show that the factors the Second Circuit set forth in *City of Detroit v. Grinnell Corp.*, 495 F. 2d 448 (2d Cir. 1974) ("*Grinnell*"), weigh in favor of approving the agreement. *Charron v. Wiener*, 731 F. 3d 241, 247 (2d Cir. 2013). The *Grinnell* factors are:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (quoting *Grinnell*, 495 F.2d at 463). Here, the *Grinnell* factors overwhelmingly favor preliminary approval of the Settlement Agreement.

**1.** **The Complexity, Expense, and Likely Duration of the Litigation**

"The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663

(S.D.N.Y. 2015). Consumer class action lawsuits, like the Action, are complex, expensive, and lengthy. *See, e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010); *see also Manley v. Midan Rest., Inc.*, 14 Civ. 1693 (HBP), 2016 WL 1274577, at *9 (S.D.N.Y. Mar. 30, 2016) ("Most class actions are inherently complex[.]"). Should the Court decline to approve the settlement agreement, the path of litigation to a final judgment would be lengthy. Additional discovery, including numerous depositions spread across the country would be sought, requiring time-consuming review, preparation and travel. The case also would require extensive expert analysis of the qualities of Harmless Harvest Products as well as the consumer impact of Defendant's representations regarding the product's purported 100% Organic or Raw attributes. The case likely would shape up to be a battle of the experts, and thus, expert expenses would be substantial. As a putative nationwide class action, complex legal and factual issues would be the subject of pretrial motions, including for class certification. The presence of several competing experts on liability and damages would likely also have led to numerous *Daubert* motions. The class certification decision may have also led to a Rule 26(f) interlocutory appeal, potentially delaying prosecution of the case should a stay pending appeal be granted. Given the prospect of protracted litigation, engendering enormous time and monetary expenditure, the proposed settlement conserves valuable resources of the Parties and the Court, thus strongly weighing in favor of preliminary approval.

## 2. The Reaction of the Class to the Settlement

Of course, since the proposed Settlement Class has not yet received notice of the settlement, it is premature to address the reaction of the Settlement Class to the Settlement at this stage. However, Plaintiffs are confident that Class Members will overwhelmingly support the

Settlement, as the proposed terms achieve significant injunctive relief that Plaintiffs sought in their Complaint, and that benefits the class.

**3.      The Stage of Proceedings and the Amount of Discovery Completed**

The third *Grinnell* factor – the stage of the proceedings and the amount of discovery completed – considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. at 224.

Here, although the Action is in an early stage of the litigation, Plaintiffs have conducted extensive discovery into Defendant's advertising, labeling, and sales of Harmless Harvest's Products, and a team of attorneys traveled to Bangkok, Thailand to conduct on-site investigations regarding the alleged claims. Counsel reviewed detailed sales and pricing information produced by Defendant prior to the mediation, so they were well informed of the scope of the proposed class and the magnitude of the potential damages before negotiating. Accordingly, before reaching the proposed Settlement, Class Counsel had conducted an extensive review of the legal and factual issues and are well equipped to evaluate the strengths and weaknesses of Plaintiffs' claims.

Moreover, Class Counsel have extensive experience in litigating class action cases and cases of this type, so they are also aware of the legal merits and likely pitfalls for the parties in this case. Class Counsel are absolutely confident that they have a thorough appreciation of the facts — favorable and unfavorable — which bear upon the merits of the claims in this litigation.

### 4.     The Risks of Establishing Liability and Damages

"Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb 18, 2011).  "[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, No. 00 Civ. 9806, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007); *accord Zeltser v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531(FM), 2014 WL 4816134, at *6 (S.D.N.Y. Sept. 23, 2014).

Plaintiffs recognize that, as with any litigation, the Action involves uncertainties as to its outcome.  Defendant continues vigorously to deny Plaintiffs' allegations, and, should this matter proceed, it will vigorously defend itself on the merits, including by opposing class certification. Defendant would likely appeal, if possible, decisions in Plaintiffs' favor.  Defendant would challenge Plaintiffs at every litigation step, presenting significant risks of ending the litigation while increasing costs to Plaintiffs and the Settlement Class members.  Further litigation presents no guarantee for recovery, let alone a recovery greater than the recovery for which the Settlement provides.

For these reasons, the risks of establishing liability and damages strongly support preliminary approval.

### 5.     The Risk of Maintaining Class Action Status Through Trial

The Action settled before motions or rulings on class certification, and the current certification is for settlement purposes only.  Defendant has stated that but for the Settlement, it would vigorously oppose class certification.  *See In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 6615615, at *5 (E.D.N.Y. Aug. 7, 1998) (possibility that defendant would challenge maintenance of class in absence of settlement was risk to class and potential recovery).

Furthermore, even if the Court were to certify a litigation class, the certification would not be set in stone. *Gen Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *see also Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 5794873, at *15 (N.D. Cal. Nov. 6, 2014) (decertifying Rule 23(b)(3) class in consumer fraud case). Given the risks, this factor weighs in favor of final approval. *See, e.g., Mills v. Capital One, N.A.*, No. 14 CIV 1937 HBP, 2015 WL 5730008, at *6 (S.D.N.Y. Sept. 30, 2015).

**6.    The Ability of Defendant to Withstand Greater Judgment**

It is more important that the Settlement Class receive some relief than possibly "yet more" relief. *See Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012); *see also Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 83 (1st Cir. 2015) ("The fact that a better deal for class members is imaginable does not mean that such a deal would have been attainable in these negotiations, or that the deal that was actually obtained is not within the range of reasonable outcomes."). Furthermore, "[c]ourts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Products Consumer Litig.*, No. 12-CV-2429 (ADS)(AKT), 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014). A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452 (RLE), 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014).  For these reasons, this factor is neutral.

**7.     The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

"There is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Visa*, 396 F. 3d 96, 119 (2d Cir. 2005). "In other words, the question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]" *Bodon v. Domino's Pizza, LLC*, No. 09-CV-2941 (SLT), 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015).

Here, the relief for which the Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and in light of all the attendant risks of litigation. The gravamen of the Action is that Defendant allegedly is deceiving consumers by previously labeling and advertising the Harmless Harvest Products as "100% Organic" or "Raw" when, in fact, Plaintiffs allege they are not. The injunctive relief for which the Settlement provides – i.e., permanent removal of the "100% Organic" or "Raw" statements from the Products' labeling, as well as ongoing third-party monitoring as to the accuracy of the Products' labels – is an excellent outcome both for the Settlement Class members and for future consumers.

As discussed above, while Plaintiffs believe their claims are strong, continuation of this litigation poses significant risks. While continuation of the litigation might not result in an increased benefit to the Settlement Class, it would lead to substantial expenditure by both Parties. Taking into account the risks and benefits Plaintiffs have outlined above, the Settlement falls

within the "range of reasonableness." Class Counsel have achieved the best possible recovery considering the merits of the Settlement weighed against the cost and risks of further litigation.

Thus, collectively and independently, the *Grinnell* factors warrant the conclusion that the Settlement Agreement is fair, adequate, and reasonable. As such, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

**D.     The Proposed Notice Program Satisfies Rule 23 and Due Process and Should Be Approved**

**1.     The Proposed Notice Program is Adequate**

As the Supreme Court explained in *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950):

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

The notice provisions in the Settlement Agreement ("Notice Program") in this case, described below, meet this standard.

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Nevertheless, there is no definitive standard for determining what constitutes the best notice practicable where class members cannot be identified through reasonable efforts. What constitutes reasonable effort as well as what constitutes the best notice practicable under the circumstances depends upon the individual facts

18

in the case. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 232 (D.N.J. 1997) (quoting *Carlough v. Amchem Products*, 158 F.R.D. 314, 325 (E.D. Pa. 1993) ("In all cases the Court should strike an appropriate balance between protecting class members and making Rule 23 workable."). "When individual notice is infeasible, notice by publication in a newspaper of national circulation . . . is an acceptable substitute." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004); *see also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 107 (S.D.N.Y. 2007) (Rule 23(b)(3) class) ("[W]hen class members' names and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due process."). In *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 09-cv-7670, U.S. Dist. LEXIS 157910 (N.D. Ill. Nov. 30, 2011), the parties implemented a notice program that utilized a combination of print newspaper publication, website publication notice, and inventive targeted on-line advertising and is similar to the Notice Program proposed here:

> The notification plan implemented by Rust [the Claims Administrator] and approved by the Court included: (1) publication in a 2/5 page advertisement in Parade on September 11, 2011, the largest-circulation magazine in the nation and a weekend newspaper supplement, with a national circulation of 32,400,000 in major newspapers across the nation; (2) internet advertising on the 24/7 Network, which publishes notice to a wide range of popular internet sites and resulted in approximately 18 million additional impressions of the notice on a wide variety of popular websites; (3) Rust launched and continues to administer a website (www.couponmarketinglitigation.com) serving as the "long-form" notice, which contains all relevant Court documents, provides for the downloading of claim forms, and provided the ability of Settlement Class members to opt-out online if they so desired; and (4) Rust supported the effectiveness of the settlement website with targeted on-line advertising and sponsored key word search advertisements. In addition to the notice contemplated by the parties, the news of the settlement was reported in numerous publications on the Internet.

*Id.* at \*6-\*7. The court found this to be the best method practicable under the circumstances of that case and to comport with due process and Rule 23 at both the preliminary and final approval stages. *Id.* at \*6; *see also Jermyn v. Best Buy Stores, L.P.,* No. 08 Civ. 00214(CM), 2010 WL 5187746, at \*3-5 (S.D.N.Y. Dec. 6, 2010) (approving notice plan comprised of creation of a settlement website and publication in several metropolitan and statewide newspapers and on the defendant's website since "individual notice is impossible because neither Best Buy nor Jermyn has any way of identifying customers who unsuccessfully sought a price match under Best Buy's price-match guarantee"); *Saltzman v. Pella Corp.*, 257 F.R.D. 471 (N.D. Ill. 2009), *aff d*, 606 F.3d 391 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 998 (2011) (certifying consumer fraud claims alleged by purchasers of windows and authorizing notice via publication, television, and the internet).

As Settlement Class Members may be widely dispersed, the parties have created a publication notice plan which is aimed at reaching as many Settlement Class Members as possible under the circumstances. *See* proposed Notice Plan, Lee Decl. Exhibit B. As part of this plan, Notice will be published in print media, such as a one-time publication in People Magazine, a national weekly publication with a circulation of 3,400,000, as a 1/3 page black and white advertisement. To supplement the print publication notice, the Settlement Administrator has designed a robust internet-based notice plan that includes impressions of targeted internet banner advertisements and keyword search advertising through popular search engines and websites – Conversant Ad Network, Facebook, and Yahoo Ad Network.

In addition to the publication of Notice in print media and internet based notice, the Settlement Administrator will establish both a website and a toll-free number dedicated to this settlement.

Accordingly, where individual Settlement Class Members cannot be identified, this widespread publication notice campaign is the best practicable notice under the circumstances. The Settlement Administrator expects that the notice plan will reach at least 70.2% of all U.S. adults aged 18 and over, an average of 2.2 times each.

**2.      The Form and Content of the Class Notice is Adequate**

The form of the class notice is governed by Rule 23(c)(2), which provides that "[t]he notice must clearly and concisely state in plain, easily understood language":

(i)       the nature of the action;

(ii)      the definition of the class certified;

(iii)     the class claims, issues or defenses;

(iv)      that a class member may enter an appearance through an attorney if the member so desires;

(v)       that the court will exclude from the class any member who requests exclusion;

(vi)      the time and manner for requesting exclusion; and

(vii)     the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The Parties' proposed Publication Notice and the Settlement Notice to be published on the settlement administration website are attached as Lee Decl. Exhibits C and D and meet all of these requirements.  Accordingly, the Court should preliminarily approve the Notices.

### E.	The Court Should Appoint Settlement Class Counsel

Rule 23(c)(1)(B) states that "[a]n order certifying a class action . . . must appoint class counsel under Rule 23(g)."  Rule 23(g)(1)(A), in turn, states that "[i]n appointing class counsel, the court must consider: (i) the work counsel has done in identifying or investigating potential claims in an action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class."

As set forth at Section B(1)(d), *supra*, Class Counsel is amply qualified and experienced to pursue claims and negotiate settlement in this class action. C.K. Lee of Lee Litigation Group, PLLC has extensive experience in class action proceedings in this District and the Second Circuit and already has devoted substantial time, resources, and leadership to the Action.  The qualifications of Class Counsel and the scope of Class Counsel's work in this Action are set forth in greater detail in the Lee Declaration, filed contemporaneously herewith.  Plaintiffs accordingly move the Court for an order appointing Lee Litigation Group, PLLC as Class Counsel under Rule 23(c)(1)(B).

### F.	The Court Should Set a Final Approval Schedule

The last step in the settlement approval process is the final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed Settlement.  At that hearing, members of the Settlement Class, or their counsel, may be heard in support of or in opposition to the Settlement.  Plaintiffs propose setting settlement deadlines according to the following schedule:

<u>Notice</u>: Notice of the Settlement shall be published 45 days after entry of a Preliminary Approval Order in the form attached as Exhibit C to the Lee Declaration. By the same date, a toll-free telephone number for receiving calls related to the Settlement also shall be established by the Settlement Administrator. Within 5 days after entry of a Preliminary Approval Order, Notice of the Settlement in the form attached as Exhibit D to the Lee Declaration, along with the copy of the Preliminary Approval Order, shall be posted to a public website established and maintained by the Settlement Administrator.

<u>Opt-Outs and Objections</u>: Settlement Class members wishing to file objections to the Settlement or exclude themselves from the Settlement Class shall do so in writing within 60 days after the Notice is published.

<u>Final Approval</u>: a hearing at which the Court evaluates whether to finally approve the Settlement shall be set at least 30 days after Settlement Class members are required to file objections or exclude themselves from the Class.

If preliminary approval is granted, the proposed Settlement Class members will be notified of the terms of the Settlement and informed of their rights in connection therewith, including their right to appear and be heard at the hearing.

## **CONCLUSION**

For the foregoing reasons, Class Counsel respectfully request that the Court grant the relief requested herein. A proposed order is attached as Exhibit A to the Notice of Plaintiff's Unopposed Motion for Preliminary Settlement Approval, filed contemporaneously herewith.

Date: December 27, 2016

Respectfully submitted,

LEE LITIGATION GROUP, PLLC

By: s/ C.K. Lee
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
Angela Kwon (AK 1396)
Taimur Alamgir (TA 9007)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188