**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
GUOLIANG MA, ELIZABETH PEGUERO,          :
SHARON MANIER, and KIN FAI LAU,          :          16-cv-7102 (JMA)(SIL)
on behalf of themselves and others similarly   :
situated,                                :          AZRACK, J.
                                         :
                    Plaintiffs,          :
                                         :
              **-against-**              :
                                         :
HARMLESS HARVEST, INC.,                  :
                                         :
                    Defendant.           :
                                         :
------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT**
**OF PLAINTIFFS' MOTION FOR APPROVAL OF**
**ATTORNEYS' FEES, SERVICE FEES, AND REIMBURSEMENT OF EXPENSES**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
Taimur Alamgir (TA 9007)
Angela Kwon (AK 1396)
30 East 39th Street, Second Floor
New York, New York 10016
Tel: (212)465-1180
Fax: (212)465-1181

TABLE OF CONTENTS

I.      INTRODUCTION…………………………………………………………1

II.     BACKGROUND……………………………………………………………2

        A.      Plaintiffs' Claims………………………………………………………2

        B.      Procedural History……………………………………………………3

        C.      Terms of the Settlement…………………………………………………4

III.    THE REQUESTED AWARD OF ATTORNEYS' FEES & COSTS IS

        REASONABLE UNDER A LODESTAR METHOD AND MERITS APPROVAL..5

        A.      Standards for Evaluation Attorneys' Fees…………………………………8

        B.      The Requested Fees and Expenses are Reasonable and Appropriate………..9

                i.      The requested fee is reasonable under the Goldberger Factors………9

                        a. Time and Labor Expended……………………………………9

                        b. The Magnitude and Complexities of the Litigation………………11

                        c. The Risk of the Litigation………………………………………11

                        d. Quality of Representation………………………………………15

                        e. Requested Fee in Relation to the Size of the Settlement …………21

                        f. Public Policy Considerations…………………………...………23

                ii.     The requested expense reimbursements are also reasonable…..…….24

IV.     INCENTIVE AWARDS……………………………………………...…………25

CONCLUSION…………………………………………………………………..26

TABLE OF AUTHORITIES

*Bailey v. AK Steel Corp.,* 2008 WL 553764 (S.D. Ohio 2008) ............................................................ 5

*Beckman v. KeyBank, NA.,* 293 F.R.D. 467 (S.D.N.Y. 2013) ........................................................ 8, 25

*Bellifemine v. Sanofi-Aventis US LLC,* 2010 U.S. Dist. LEXIS 79679 (Aug 2010) .................... 12

*Blessing v. Sirius XMRadio Inc.,* 507 F. App'x 1 (2d Cir. 2012) ........................................................ 7

*Blum v. Stenson,* 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)................................. 6, 7

*Chambers v. Whirlpool Corp.,* 214 F. Supp. 3d 877 (C.D. Cal. 2016) ............................................ 6

*City of Detroit v. Grinnell,* 495 F.2d 448 (2d Cir. 1974) .................................................................. 12

*City of Providence v. Aeropostale, Inc.,* 2014 WL 1883494 (S.D.N.Y. May 9, 2014)................. 5, 12

*Colgate-Palmolive Co. Erisa Litig.,* 36 F. Supp. 3d at 353 (S.D.N.Y. 2014) ............................ 8, 25

*Davis v. J.P. Morgan Chase & Co.,* 827 F. Supp. 2d 172 (W.D.N.Y. 2011) ..................................... 8

*Dupler v. Costco Wholesale Corp.,* 705 F. Supp. 2d 231 (E.D.N.Y. 2010) .............................. 23, 25

*Feder v. Frank,* 716 F.3d 1173 (9th Cir. 2013) .................................................................................. 6

*Fraley v. Facebook,* 2013 WL 4516806 (N.D. Cal. 2013) ............................................................... 21

*Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000) ................................................. passim

*Goldkorn v. County of San Bernardino,* 2012 WL 476279 (C.D. Cal. 2012) ................................. 7

*Grant v. Capital Mgmt Servs., L.P.,* 2014 U.S. Dist. LEXIS (S.D. Cal. 2014)............................... 6

*Hanlon v. Chrysler Corp.,* 159 F.3d 1011 (9th Cir. 1988) ............................................................ 6, 7

*Hensley v. Eckerhard*, 416 U.S. 424 (1983) .................................................................................. 5, 7

*Hernandez v. Merrill Lynch & Co.,* Case No. 11-cv- 8472 KBF DCF, 2013 WL
1209563 (S.D.N.Y. Mar. 21, 2013) ...................................................................................................... 8

*In re China Sunergy Sec. Litig.,* No. 07-cv-7895 (DAB), 2011 WL 1899715
(S.D.N.Y. May 13, 2011) .................................................................................................................... 25

*In re Colgate-Palmolive Co. Erisa Litig.,* 36 F. Supp. 344 (S.D.N.Y. July 8, 2014)............ 8, 25

*In re EVCI Career Colleges Holding Corp. Sec. Litig.,* Case No. 05-cv-10240 CM,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..................................................................................... 8

*In re Independent Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180 (S.D.N.Y.2003)................................................................................................ 24

*In re Nortel Networks Corp. Sec Litig.*, 539 F. 3d 129 (2d Cir. 2008) ................................. 24

*In re Sinus Buster Products Consumer Litig.*, Case No. 12-cv-2429 (ADS)(AKT), 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ................................................ 23, 25

*In re Sony SXRD Rear Projection Television Class Action Litig.*, Case No. 06-cv-5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008)..................................... 23

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985) ................. 12, 15, 20

*Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644 (S.D.N.Y. June 27, 2012)....... 20, 23, 24

*Kim v. Space Pencil, Inc.,* 2012 WL 5948951 (N.D. Cal. 2012)............................................ 6

*Luo v. L&S Acupuncture, P.C.,* 649 F. App'x 1 (2d Cir. 2016) ............................................ 7

*Maley v. Del Global Technologies Corp.,* 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) . passim

*McCoy v. Health Net, Inc.,* 569 F. Supp. 2d 448 (D.N.J. 2008) ........................................... 21

*McDaniel v. Cty. Of Schnectady,* 595 F.3d 41 (2d Cir. 2010) ............................................... 8

*Pokorny v. Quixtar, Inc.,* 2013 WL 3790896 (N.D. Cal. July 18, 2013)............................... 22

*Perdue v. Kenny A.,* 558 U.S. 542, 130 S. Ct. 1662 (2010)…………………………….……7

*Staton v. Boeing,* 327 F. 3d 938 (9th Cir. 2003)…………………………………………..21

*Shapiro v. JPMorgan Chase & Co.,* 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)……....…8

*Sheppard v. Consol. Edison Co. of New York,* Case No. 94-cv-0403(JG), 2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002) ............................................................... 21

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,* 258 F. Supp. 2d 254 (S.D.N.Y. 2003)............................................................................................ 25, 26

*Taft v. Ackermans,* 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ......................................... 15

*Van Oss v. New York State,* 2012 U.S. Dist. LEXIS 91684 (S.D.N.Y. 2012)........................ 6

*Vizcano v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002) ................................................. 8

*Yuzary v. HSBC Bank USA, NA.,* 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ..................... 8

*Zeltser v. Merrill Lynch & Co.,* Case No. 13-cv-1531 FM, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ...................................................................................... 8

iii

## I.    INTRODUCTION

Named Plaintiffs Guoliang Ma, Elizabeth Peguero, Sharon Manier and Kin Fai Lau ("Plaintiffs" or "Named Plaintiffs") hereby move the Court for entry of an Order awarding Lee Litigation Group, PLLC ("Class Counsel" or "LLG"), pursuant to the case law of this Circuit and the Settlement Agreement and General Release [ECF No. 7-1] (the "Settlement Agreement"), attorneys' fees in the amount of $555,000 which is inclusive of out-of-pocket expenses in the amount of $6,762.83 (as of June 9, 2017).   In addition, Plaintiffs request that the Court grant incentive awards to Plaintiffs Guoliang Ma, Elizabeth Peguero, Sharon Manier and Kin Fai Lau, the Class Representatives, in the amount of $5,000.00 per representative (totaling $20,000) in recognition of their valuable service to the Class.

Following a thorough investigation, extensive arms' length negotiations and mediation under the auspices of a respected mediator from JAMS with substantial experience in complex consumer fraud litigation, the parties have agreed to settlement terms that they believe fairly resolve this action, avoid protracted litigation, and provide effective injunctive relief for Class Members. The class settlement has caused label changes to Harmless Harvest's coconut water products (the "Products") to remain in place, ending allegedly fraudulent labeling assertions. The class settlement further provides for payment by Defendant of (i) attorneys' fees, incentive awards, and out-of-pocket expenses, the total value of which is up to $575,000; (ii) up to $350,000 in notice and administration costs to the Claims Administrator, and (iii) payment of consulting fees by Defendant to a third-party consultant engaged to review the company's product labels for ongoing accuracy for a period of 2 years following the Effective Date of the Settlement Agreement.

As set forth below, Plaintiffs' requested attorneys' fees and costs and requested incentive awards are fair and reasonable.  Accordingly, Plaintiffs respectfully request that the Court grant this instant motion in its entirety.

## II. BACKGROUND

### A.    Plaintiffs' Claims

As detailed in the Complaint, Plaintiffs alleged that, through its widespread marketing campaign, Defendant labeled, packaged and advertised its products as "100% ORGANIC" and "USDA ORGANIC" (the "100% organic claims") and "100% RAW" (the "raw claims") even though Defendant, upon information and belief, allegedly knew that its products have not been solely made from organic coconuts and were not "raw."  Plaintiffs alleged that Defendant deceived and misled consumers into paying a sizable pricing premium that they would not have paid had they known the truth about Defendant's products.

Specifically, Plaintiffs alleged that Defendant purposefully and knowingly (i) purchased coconuts from coconut plantations which have no organic certification; (ii) purchased coconuts from street vendors whose source of supply is unknown; (iii) purchased "green-washed[1]" coconuts from "brokers" who would certify that the coconuts are organic even though they are not; (iv) caused farmers to sign a "Farmer's Agreement" promising to use organic farming techniques without testing soil samples; and (v) conspired with the organic certifier Bioagricert in obtaining fraudulent organic certification. As to Defendant's representations that the products

---

[1] Green washing refers to the alleged practice by which coconut farm owners would contract with a middleman referred to as the "broker," who is typically responsible for hiring workers to work on the farm as well as purchasing the coconuts from the farmers. When a broker purchases coconuts from the farmers and resells to a company like Harmless Harvest, they would vouch for the coconuts being organic (even if they are not) by creating a purported "Certificate of Inspection," commonly referred to by the locals as the "COI." In this way, large amounts of non-organic coconuts could enter the supply chain of a company like Harmless Harvest camouflaged as organic coconuts.

are "100% Raw," Plaintiffs alleged such representations were false and misleading, as the products lack the traditional characteristics and qualities associated with raw products.

**B.     Procedural History**

Following several months of legal research, investigation and due diligence, including a 5 day trip to Thailand in October 2015 to conduct an in-person investigation and meetings with witnesses, on November 17, 2015, Lee Litigation Group, PLLC ("LLG") sent Harmless Harvest a demand letter on behalf of Plaintiff Guoliang Ma and other members of a putative class.  A subsequent letter also was sent to Harmless Harvest by LLG on January 29, 2016.  LLG also conveyed to Harmless Harvest a draft Complaint on behalf of Plaintiff Ma and a putative nationwide class.

The Parties entered into a Tolling Agreement on March 18, 2016 (later amended), and scheduled a mediation session for June 7, 2016 in San Francisco with Cathy Yanni, Esq., a well–respected JAMS mediator experienced in consumer class action suits.  In preparation for the mediation, the Parties exchanged documents and information relating to the asserted claims, and presented detailed mediation statements to Ms. Yanni.     The mediation before Ms. Yanni lasted over 8 hours.  Although the parties were unable to reach a settlement during mediation, they continued their settlement discussions in the months that followed the mediation, including telephonic negotiations involving Ms. Yanni.  As a result of the Parties' efforts following mediation, after protracted, arm's length negotiations over seven months, and with Ms. Yanni's assistance, the Parties entered into a Settlement Agreement.

In order to obtain Court approval of the class settlement, on December 23, 2016, a putative nationwide class action complaint entitled *Ma, et al. v. Harmless Harvest, Inc*. was filed

in the United States District Court for the Eastern District of New York (the "Action").  On May 12, 2017 the Court granted preliminary approval of the settlement and approved the Notice plan.

## C.      Terms of the Settlement

Under the terms of the Settlement Agreement preliminary approved by the Court, Defendant has agreed to substantial injunctive provisions to refrain from using certain labeling and advertising claims. Defendant has, pursuant to the Settlement Agreement, agreed to maintain the removal of all statements from Harmless Harvest products' packaging claiming the Products are "100% Organic" and "Raw."   Pursuant to the Settlement Agreement, Harmless Harvest agrees that such changes will remain in effect after the Settlement Agreement's Effective Date. Moreover, the Parties have agreed to engage Sandy Mays of Wolf DiMatteo & Associates as an independent third party consultant to review, for a period of 2 years from the Settlement Agreement's Effective Date, labels for each current flavor of coconut water and each new flavor of coconut water that is introduced to market.   Ms. Mays is a Managing Partner of Wolf DiMatteo & Associates.   She manages organic compliance services and has over 20 years of experience in organic production and marketing.   Ms. Mays works with businesses across the country to oversee the organic certification of products, source organic ingredients, and develop organic system plans.   Ms. Mays is completely independent of both Plaintiffs and Defendant. Ms. Mays shall review Harmless Harvest's product labels for ongoing accuracy and provide reports as to the accuracy of the labels (including copies of such labels) to Class Counsel.   She will also review organic certifications issued to Harmless Harvest and its farming operators for a period of two years from the Settlement Agreement's Effective Date, which would be maintained in a secure, password-protected database that is owned, maintained and controlled by Harmless Harvest.   Ms. Mays would review the certifications on a periodic basis and report to C.K. Lee, as

4

Class Counsel, whether the certifications appear to be in order.  The full cost of the review will be borne by Harmless Harvest.

The injunctive relief serves as full consideration for dismissal of this action against Defendant.  In exchange, Plaintiffs, on behalf of themselves and the Class, have agreed to provide Harmless Harvest with a full release of their legal claims in the lawsuit.

Finally, Defendant has agreed to pay attorneys' fees and expenses of up to $555,000, and an aggregate incentive award of up to $20,000 total to the Class Representatives, Guoliang Ma, Elizabeth Peguero, Sharon Manier, and Kin Fai Lau, for their efforts in this litigation and the risks they assumed, subject to Court approval.  Class Counsel submits that the Settlement and requested awards are fair, adequate, and reasonable and should be approved.

## III. THE REQUESTED AWARD OF ATTORNEYS' FEES & COSTS IS REASONABLE UNDER A LODESTAR METHOD AND MERITS APPROVAL

### A.       Standards for Evaluating Attorneys' Fees

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "in a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Attorneys who reach a settlement for the benefit of Class Members are entitled to a reasonable fee as just compensation for their services. *See City of Providence v. Aeropostale, Inc.*, Case No. 11-cv- 7132 CM GWG, 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014).  "Negotiated and agreed upon attorney's fees as part of a class action settlement are encouraged as an "ideal" toward which the parties should strive." See *Bailey v. AK Steel Corp*., 1:06-cv-468, 2008 WL 553764 at *1 (S.D. Ohio Feb. 28, 2008); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (holding that an agreed-to-fee is an ideal situation).

In class actions where the only relief obtained is injunctive in nature, "courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof." See *Van Oss v. New York State*, 10 Civ. 7524 (S.D.N.Y. June 26, 2012), 2012 U.S. Dist. LEXIS 91684, citing *Hanlon v. Chrysler Corp.*, 159 F.3d 1011, 1029 (9th Cir. 1998); See also *Kim v. Space Pencil, Inc.*, C 11-03796 LB, 2012 WL 5948951, at*7 (N.D. Cal. Nov. 28, 2012) (same) (awarding attorney's fees using lodestar method in injunctive relief class action); see also *Grant v. Capital Mgmt Servs.*, L.P., No. 10-cv-32471-WQH, 2014 U.S. Dist. LEXIS 29836, at *22-25 (S.D. Cal. Mar. 5, 2014) (approving settlement which provided for injunctive relief only, including approval of attorneys' fees and costs based on lodestar method); *Feder v. Frank (In re HP Inkjet Printer Litig.)*, 716 F.3d 1173, 1187 (9th Cir. 2013) (holding that a district court may award lodestar fees to compensate class counsel for any non-coupon relief they obtain, such as injunctive relief); *Chambers v. Whirlpool Corp.,* 214 F. Supp. 3d 877 (C.D. Cal 2016) (the lodestar method is typically utilized when the relief obtained is "not easily monetized," such as when injunctive relief is part of the settlement."

The lodestar method is strongly favored by the Supreme Court:

Although the lodestar method is not perfect, it has several important virtues. First, in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). Developed after the practice of hourly billing had become widespread, the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Second, the lodestar method is readily administrable…[and] "the lodestar calculation is

objective," Hensley, supra, at 433, 103 S. Ct. 1933, 76 L. Ed. 2d 90 and thus cabins the discretion of trial judges, permits meaningful judicial review and produces reasonably predictable results.

*Perdue v. Kenny A.*, 558 U.S. 542-551-52, 130 S. Ct. 1662, 1672 (2010).

The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate. *Hanlon v. Chrysler Corp.*, 150 F.3d at 1029; *Blum v. Stevenson*, 465 U.S. 886, 897, 104 S. Ct. 1541 (1984) and *Goldkorn v. County of San Bernadino*, EDCV 06-707-VAP, 2012 WL 476279, at *9 (C.D. Cal. Feb 13, 2012) (approving an award of attorneys' fees in a settlement granting injunctive and declaratory relief for the class without providing a monetary award to the class). The resulting figure may be adjusted upward to account for several factors, to determine its reasonableness. See *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d at 370 (the base fee award number is "typically enhanced by an appropriate multiplier to reflect consideration of a number of factors, including the contingent nature of success and the quality of the attorney's work.").

Courts in the Second Circuit likewise compute a "presumptively reasonable fee" that prevailing plaintiffs' attorneys should be paid. *Luo v. L&S Acupuncture, P.C.* 649 F. App'x 1, 2 (2d Cir. 2016). Courts in this Circuit consider the following factors in order to ensure that the fees are reasonable:

(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

See *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)); *see also Blessing v. Sirius MI Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012) ("The reasonableness of a fee calculated by either . . . metho[d] . . . is determined by the factors outlined in . . . [*Goldberger*]"). "The Goldberger factors are applicable to the court's reasonableness determination whether a percentage-of-fund or lodestar approach is used…and in the latter context, whether a multiplier should be applied to the lodestar." *McDaniel v. Cty. Of Schnectady*, 595 F.3d 41,, 423 (2d Cir. 2010).

Courts in this circuit award a range of multipliers depending on the strength of the *Goldberger* factors. Multipliers of up to 8 are typically deemed reasonable. *See, e.g.*, *Hernandez v. Merrill Lynch & Co.*, 2013 WL 1209563, at *9 ("Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers"); *Yuzary*, 2013 WL 5492998, at *10-11 (noting same and awarding attorneys' fees equal to a multiplier of 7.6); *Beckman v. KeyBank, NA.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (noting same and awarding attorneys' fees equal to multiplier of 6.3); *Zeltser v. Merrill Lynch & Co.*, Case No. 13-cv-1531 FM, 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) (noting same and awarding attorneys' fees equal to a multiplier of 5.1); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 183-87 (W.D.N.Y. 2011) (awarding fees equal to a 5.3 multiplier); *In re Colgate-Palmolive Co. Erisa Litig.*, 36 F. Supp. 3d at 353 (awarding fees equal to a 5.2 multiplier); *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *24 ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District"); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, Case No. 05-cv-10240 CM, 2007 WL 2230177, at *17 (S.D.N.Y. July 27, 2007) (same); *Maley*, 186 F. Supp. 2d at 371 (awarding fees equal to a "modest" multiplier of 4.65). See also *Vizcano v. Microsoft Corp.*, 290 F.3d 1043, 1051 n. 6 (9th Cir. 2002) (describing appendix to opinion,

8

finding a range of multipliers in class settlements of "0.6-19.6, with most (20 of 24, or 83%) from 1.0 – 4.0 and a bare majority (13 of 24, or 54% in the 1.5-3.0)"

As set forth below, Plaintiffs' requested attorneys' fees are reasonable under the lodestar method and pursuant to the *Goldberger* factors, and Class Counsel is entitled to a reasonable multiplier of 2.08x.

### B.    The Requested Fees and Expenses are Reasonable and Appropriate

Here, Class Counsel spent a total of 584.4 hours of professional work on this litigation. The lodestar calculation for these services is $266,290.00. The detailed breakdown of these hours and how they were applied with hourly rates can be found in the Declaration of C.K. Lee and the Exhibits attached thereto.

Given this lodestar calculation, Class Counsel is requesting a multiplier of approximately 2.08x, which is reasonable based upon the range of multipliers routinely awarded in the Second Circuit and other factors such as the risk of the litigation, the quality and performance of Class Counsel, and the results achieved for the Class Members.

### i.    *The requested fee is reasonable under the Goldberger Factors*

Class Counsel's request for fees should be approved because it is reasonable under the Goldberger factors, as explained below.

### a.    Time and Labor Expended

Class Counsel's fee request is reasonable because counsel expended substantial time and labor to obtain the proposed Settlement for the Class Members. As set forth above, Class Counsel expended a total of 584.4 professional hours on this litigation. This substantial labor included: (1) performing factual research about Harmless Harvest and its advertising and marketing practices; (2) documenting the claims made by Harmless Harvest pre-lawsuit; (3) performing legal research about potential causes of action against Harmless Harvest, the

regulation of organic foods, including the federal standards set by the United States Department of Agriculture National Organic Program and the Organic Foods Production Act of 1990, the organic standards and factors including soil quality, animal raising, pest and weed control, and use of input materials, as well as the processes by which materials may be considered raw; (4) speaking with industry professionals regarding the ingredients and effects of organic and raw coconuts and evaluating Harmless Harvest's claims; (5) flying to Bangkok, Thailand to investigate mislabeling allegations against Harmless Harvest, including inspecting coconut farms, taking photos and interviewing witnesses (including coconut farmers, middlemen, suppliers and former suppliers of Harmless Harvest coconuts and other insiders) with the help of a local Thai translator; (6) drafting the demand letters and Complaint; (7) reviewing, researching and addressing issues raised by Harmless Harvest; (8) engaging in further extensive review of Harvest's packaging, labels, marketing and website; (9) drafting and reviewing a revised Complaint; (10) engaging in extensive negotiations with Harmless Harvest, both independently and in a full day mediation in California with a respected JAMS mediator, to achieve the best result for the Class; (11) continuing months long negotiations with Harmless Harvest to further clarify the terms of the Settlement and enter into the Settlement Agreement; (12) assessing and evaluating the injunctive relief achieved for the Class; (13) reviewing and selecting a competent class action administrator and evaluating and coordinating the Notice and Claims process; (14) meeting and consulting frequently with Plaintiffs; (14) drafting the motion for preliminary approval and achieving preliminary approval of the settlement; and (15) drafting the instant application for attorneys' fees and service awards.

Class Counsel's extensive negotiations post-mediation resulted in a number of amendments and clarifications to the original base terms discussed at mediation, and resulted in

additional benefits to the Class, such as Harmless Harvest's funding the cost of notice and administration at its own expense in an amount up to $350,000, and Harmless Harvest's funding the cost of the third-party consultant for a 2 year period following the Effective Date of the Settlement Agreement, which is likely to be substantial[2].

Based on Class Counsel's experience, preparing further motions for final approval, attending the final approval hearing, working with the Claims Administrator to finalize the settlement, working with the consultant, Ms. Mays, to ensure continued compliance and speaking directly with any number of the nationwide Class Members, will necessitate further time and effort not quantified in this motion. Class Counsel reasonably estimates that the lodestar may be increased by as much as 20%, based on future work to be done on this class settlement. The time and substantial labor expended here weigh in favor of approval of the requested attorneys' fees.

### b.    The Magnitude and Complexities of the Litigation

The magnitude of this litigation is great. The Settlement of this nationwide class action involves Harmless Harvest, a well-known international corporation. The settlement of litigation which sought to address and halt alleged violations of consumer protection laws potentially has benefited millions of consumers across the U.S., resulting in a commitment from Harmless Harvest that it will maintain the removal from its labeling of the "100% Organic" and "raw" claims. This litigation requires knowledge of food manufacturing methods, coconut farming, organic certification processes, and locating and managing witnesses, experts and industry professionals from Thailand and elsewhere. In light of the magnitude and complexities of this litigation, this factor weighs in favor of approval of the requested attorneys' fees.

### c.    The Risk of the Litigation

---

[2] The exact amount of the consultant fees for the 2 year period is unknown at this time, as the consultant bills at an hourly rate and the total amount will depend heavily on the number of reviews and time required during the 2 year period.

"The Second Circuit has recognized that the risk associated with a case undertaken on a contingent basis is an important factor in determining an appropriate fee award." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494 at \*14; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985) all' d, 798 F.2d 35 (2d Cir. 1986) ("Numerous cases have recognized that the attorneys' contingent fee risk is an important factor in determining the fee award"); *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d at 372-73 (concluding that the "risk of litigation" factor supported the attorneys' fee in part because "[a]ny fee award or expense reimbursement to Plaintiffs' Class Counsel has always been contingent on the result achieved and on this Court's exercise of its discretion in making any award"). One of the "foremost" factors considered in setting the lodestar multiple is contingency risk; as such, the multiplier is almost always greater than one (i.e., the Court adjusts the reasonable fee at a higher amount than the simple rate multiplied by the time spent)". See, e.g., *Bellifemine v. Sanofi-Aventis US LLC*, 2010 U.S. Dist. LEXIS 79679 (August 6, 2010) at \*15 (approving 2.05 multiplier; "[t]he foremost of these factors to adjust the lodestar is the attorney's 'risk of litigation, i.e., the fact that, despite the most vigorous and competent of efforts, success is never guaranteed" quoting *City of Detroit v. Grinnell*, 495 F. 2d 448, 471 (2d Cir. 1974)).

Here, Class Counsel undertook this class action on a wholly contingent fee basis and invested considerable time and expenses to research and investigate the claims including extensive pre-litigation research and due diligence.  Based on contacts in Thailand, C.K. Lee and Shanshan Zheng traveled to Bangkok, Thailand from October 8, 2015 to October 12, 2015, to meet with coconut farmers, middlemen and suppliers to further investigate claims against Harmless Harvest and to conduct due diligence.  See Lee Decl. at ¶20.  Prior to the investigative trip to Thailand, Class Counsel spent extensive time researching the regulation of organic foods,

including the federal standards set by the United States Department of Agriculture National Organic Program and the Organic Foods Production Act of 1990, the organic standards and factors including soil quality, animal raising, pest and weed control, and use of input materials, and the processes by which materials may be considered raw. Id at ¶21. During the investigative trip to Thailand, Class Counsel ventured into the farmlands of rural Thailand, inspecting coconut farms, taking photos and interviewing witnesses (including coconut farmers, middlemen, suppliers and former suppliers of Harmless Harvest coconuts and other industry insiders) with the help of a local Thai translator.   Some of the photographs taken are published in the Complaint that was filed in this lawsuit. Id at ¶22.

Following Class Counsel's investigative trip to Thailand, on November 17, 2015, LLG sent Harmless Harvest a demand letter on behalf of Plaintiff Guoliang Ma and other members of a putative class.   A subsequent letter and draft Complaint were also was sent to Harmless Harvest by LLG on January 29, 2016.  Following the exchange of demand letters and responses, the parties entered into a Tolling Agreement (including five addendums of extension) and engaged in mediation in San Francisco, before an experienced mediator specializing in consumer fraud class actions involving beverages.  Considering that Class Counsel undertook the risk of litigation and advanced their own funds ($6,762.83 out of pocket as of June 9, 2016, along with accrual of staff time) to finance the class action, its requested fee and cost reimbursement, is reasonable.

Moreover, the risk of litigation here is substantial, as the Class would first have to overcome Harmless Harvest's contemplated dispositive motions and would then face the difficult tasks of obtaining class certification, and proving liability and damages at trial via

complex scientific evidence and dueling expert testimony, after having conducted extensive and costly discovery both in the United States and overseas in Thailand.

The claims brought by Plaintiffs themselves contain significant risk (i) in ascertaining who would be a member of the class as the details of individuals who bought Harmless Harvest coconut water since September 30, 2011, as such data may not be not readily ascertainable, and (ii) in connection with ascertaining which bottles of Harmless Harvest coconut water contained allegedly non-organic coconuts.   It is possible that certain batches may have contained 100% organic coconuts, while others did not.  It may be difficult to determine which bottles included allegedly non-organic coconuts.  Variations in the supply of coconuts caused by seasonality: during the "rainy season" in Thailand, because coconuts are harvested monthly, there will be more available supply of organic coconuts; however, in the "dry season" there may be less supply.  Moreover, Defendant may argue that the pricing premium is not based on the "100% Organic" or "raw" claims, but rather, on the Products quality in that they taste fresher, as if they are straight out of a coconut, relative to other coconut water brands.  In addition, the "raw" claim is similarly risky.  Defendant believes that using their current process, the coconut water may be considered "raw." However, they have agreed to maintain removal of the "raw" designation. Litigation on the raw claim would involve extensive investigation, depositions and expert reports and testimony. See Lee Decl. at ¶37.

Litigation also bears the risk of an appeal, which would further delay and diminish the Class Members' receipt of the benefits of this action. *See id.* (concluding that the "risk of litigation" factor supported the attorneys' fee in part because "[e]ven if the Class were able to overcome a motion to dismiss, a motion for summary judgment and a jury verdict, they would

14

still confront the question of the amount of damages, if any, incurred by the Class," and because "even if all other hurdles were overcome, there was the possibility of appeal").

As can be seen from ¶10.2 of the Settlement Agreement, Defendant requested an installment payment plan in order to deposit escrow payments toward the agreed maximum award of attorneys' fees and costs.  Even if Plaintiffs were to be meritorious and obtain a substantial damages award in litigation, they have concerns that it may be difficult to collect a significant judgment.  The current settlement allows Defendant to continue business operations, correct any allegedly misleading labels and representations, and allows the Products to continue to be sold in the market to be enjoyed by consumers, who will be correctly informed of the organic or raw status of the Products.

In light of the risks of litigation, this factor weighs strongly in favor of approval of the requested attorneys' fees.

### d.    Quality of Representation

In measuring the quality of representation factor, courts examine, inter alia, "the benefit obtained for the class, the efficiency of plaintiffs' counsel's activities, and the quality of opposing counsel." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. at 748, *affd*, 798 F.2d 35 (2d Cir. 1986); *see also Taft v. Ackermans*, 2007 WL 414493, at *10 ("To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit").

Lee Litigation Group, PLLC, and the individual attorneys involved in this action are knowledgeable and experienced in complex class action cases. Indeed, it is beyond dispute that Class Counsel is amply qualified and experienced to pursue claims (and negotiate a settlement) in this class action. The attorneys at Lee Litigation Group, PLLC, and specifically, Partner C.K. Lee, Esq. and Senior Counsel Anne Seelig, Esq., have extensive experience and expertise in

class action proceedings throughout the United States, achieving tens of millions of dollars in settlements in over 35 class actions where they were approved as class counsel.  Class Counsel have demonstrated their commitment to vigorously and competently representing the Class against Defendant's lawyers, Hogan Lovells US, LLP, who are recognized internationally. Nor is there any reason to suspect antagonism or conflict of interest between the Plaintiffs and the proposed nationwide class.

Federal Judges and Magistrate Judges in the Southern and Eastern Districts have repeatedly acknowledged and praised both C.K. Lee and his work in class action litigations:

- Hon. Joseph F. Bianco, U.S.D.J., stated: "The quality of the representation here has been extremely high.  As I pointed out, all the papers in this case have been of high quality and its clear to me that class counsel who has significant experience, did an excellent job of representing the class and achieving an excellent result for the class under the circumstances." *Han v. Sterling National Mortgage Company Inc., et al*., No. 09 Civ. 5589 (E.D.N.Y.), Transcript of Civil Cause for Oral Argument and Decision (August 9, 2012) at 16;

- Hon. Brian M. Cogan, U.S.D.J., stated: "[Among] plaintiffs' lawyers who bring actions, [C.K. Lee] is definitely at the high end in terms of [his] ability to prosecute these cases…"  *Sierra v. Triple J. Associates of Queens, Inc.*, No. 12 Civ. 4462 (E.D.N.Y.) Transcript of Conference (October 11, 2013) at 20;

- Hon. Katherine Polk Failla, U.S.D.J., stated: "I have no doubt as to the quality of the representation in this case.  I know both [Mr. Lee and Ms. Seelig] who have appeared before me in this and many other cases, and they do have substantial and

very useful experience in this regard…" *Perez v. Dos Toros, LLC, et al.*, No. 14 Civ. 9183 (S.D.N.Y.), Transcript (January 28, 2016) at 24-25;

- Hon. Lewis A. Kaplan, U.S.D.J., stated: "I have nothing but admiration for the *pro bono* and other services that [C.K. Lee] render[s] for clients who do not have any advantages. I not only approve, but admire [his work]…" *Mohamed v. Ess-a-Bagel*, No. 13 Civ. 8726 (E.D.N.Y.), Transcript (November 17, 2015) at 27.

Moreover, as Class Counsel infrequently allocates resources to paying clients, it is good public policy and essential for LLG's practice that the full amount of fees sought are awarded on cases in which a favorable class settlement is reached.  Any reduction in the requested award of attorneys' fees of $555,000 would unnecessarily benefit Defendant and have a chilling effect on the ability of LLG to engage in litigation for plaintiffs. Certain large plaintiffs' law firms have already ceased pursuing risky cases because they are not profitable[3].

Awarding Class Counsel the requested fees allows the firm to further undertake risky cases which assert new applications of law to promote good works:

- Lee Litigation Group represented blind individuals in a suit against McDonalds (*DiCarlo, et al. v. McDonald's Corporation*, et al., No. 15-cv-2273) to make soda machines accessible to visually impaired individuals (despite three precedent cases where similar claims were dismissed);

- Lee Litigation Group represented blind individuals suing New York City to install audio indicators intended to make it safe for blind people to cross intersections. *West et al. v. City of New York et al.*, 16-cv-02299 (S.D.N.Y.);

---

[3] Upon information, Labaton Sucharow ceased pursuing investigation of consumer fraud cases in 2016.

- Lee Litigation Group represented consumers against various deodorant manufacturers, alleging unlawful short filling of deodorant dispensers, which was dismissed due to preemption of the FDA. See *Bimont v. Unilever*, No. 14 Civ. 7749, 2015 WL 5256988 (S.D.N.Y. Sept. 9, 2015).

- Lee Litigation Group represents disabled children for education expense reimbursement under IDEA in the Second Circuit. *T.F. v. New York City Department of Ed*., 2d. Cir. 15-3383.

- Many cases, especially website access cases on behalf of blind individuals, are dismissed for various reasons due to the uncertainty in the law. *Marrett v. Gilt Groupe Holdings, Inc*., No. 17-cv-713 (S.D.N.Y.), *West v. Five Guys Enterprises, LLC*, No. 15-cv-2845 (S.D.N.Y.), *Gil v. Florida Power & Light Company*, No. 16-cv-24180 (Southern District of Florida), *Del-Orden v. Reebok International Ltd*., No. 15-cv-8101 (S.D.N.Y.), *Andrews v. American Spatula LLC*, No. 17-cv-766 (E.D.N.Y.).

In all of the aforementioned cases, LLG undertook the <u>entire</u> financial burden and risk. Other than the *West* matter, LLG received no compensation whatsoever for pursuing such risky claims.

In addition to the public policy benefits in awarding Class Counsel the requested fees, the benefits Class Counsel obtained for the Class Members are substantial and thus, warrant the fees award sought. These benefits include, among others:

- Funding by Defendant to support the efforts of an experienced Class Action Settlement Administrator, Epiq Class Actions and Claims Solutions, Inc. to ensure that potential Class Members are fully notified through a variety of media

as to the existence of the settlement and their rights and responsibilities thereunder;

- Engagement of an experienced third-party consultant for a period of 2 years following the Effective Date of the Settlement Agreement to ensure ongoing accuracy of Harmless Harvest product labels. Harmless Harvest will engage an independent third party, Sandy Mays of Wolf DiMatteo & Associates[4], as a consultant and will provide the consultant (for a period of two years after the Settlement Agreement's Effective Date) (the "Compliance Period") with a label for each current flavor of coconut water and each new flavor of coconut water that is introduced to market.   The consultant will review the labels for ongoing accuracy and provide reports of such accuracy to Class Counsel, C.K. Lee.   See Settlement Agreement at ¶ 5.4. The consultant will review organic certifications issued to Harmless Harvest and its farming operators for a period of two years from the Settlement Agreement's Effective Date, which would be maintained in a secure, password-protected database that is owned, maintained and controlled by Harmless Harvest.   The consultant would review the certifications on a periodic basis and report to C.K. Lee, as Class Counsel, whether the certifications appear to be in order.   Id at ¶ 5.5.

- Although the Settlement does not provide for a cash payment to Class Members, Class Counsel have obtained substantial injunctive relief and benefit for the Class Members.   Specifically, as represented in Section 5.1 of the Settlement Agreement, Harmless Harvest has agreed to maintain the removal of all "raw"

---

[4] Ms. Mays is a neutral expert with over twenty (20) years of experience in organic production and marketing.  She works with businesses across the country to oversee the organic certification of products, source organic ingredients and develop organic system plans.

19

and "100% Organic" labels from    the packaging of products shipped into the United States and agreed that such labeling changes will remain in effect after the Effective Date.

- Most importantly, since Plaintiffs commenced this action, it is the understanding of Class Counsel that Harmless Harvest has reduced its price per bottle.  Class Counsel believes that such price reduction reflects the pricing premium of Harmless Harvest's labeling representations challenged in the Action, which were revised in 2015 and will remain revised pursuant to the terms of the class settlement.  If so, it is Class Counsel's belief that Plaintiffs' counsel's fees represent a percentage less than 1% of the total monetary benefit enjoyed by the class[5].

The benefits Class Counsel obtained for the Class Members are substantial, particularly in light of the fact that they were "created without having to undertake the risks to the class incident to trial and appeals." *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. at 748.

Further underscoring the effectiveness of representation is that Class Counsel "achieved a positive result . . . while facing well-resourced and experienced defense counsel." *See Jermyn v. Best Buy Stores*, L.P., Case No. 08-cv-214 CM, 2012 WL 2505644, at *11 (S.D.N.Y. June 27, 2012); *see also Maley*, 186 F. Supp. 2d at 373 ("The quality of opposing counsel is also important in evaluating the quality of the services rendered by Plaintiffs' Class Counsel"). Indeed, opposing counsel in this case, Hogan Lovells US, LLP, is a highly respected, experienced and qualified international law firm with thousands of attorneys worldwide.  Class Counsel's ability to stand up to a goliath of the legal industry, while being only a 20 person boutique litigation firm, is a testament to Class Counsel's reputation in the market and the high

quality of its attorneys).  Class Counsel's ability to settle this action to the substantial benefit of the Class Members, considering their formidable opponents, "provides further evidence of the quality of their work." *See Maley*, 186 F. Supp. 2d at 373.

Finally, Class Counsel handled this class action skillfully and efficiently, reaching a Settlement Agreement in a relatively short time following mediation, without extensive discovery, and allowing the Class to avoid the expense and risks of trial and appeal. Class Counsel's efficient prosecution of the Class claims supports a favorable finding with regard to the quality of representation. See *Id.* This factor thus further weighs in favor of approval of the requested attorneys' fees.

### e.      Requested Fee in Relation to the Size of the Settlement

Here, Class Counsel's requested fee of $555,000 represents, in the estimation of Class Counsel, <u>less than 1%</u> of the actual benefit to the Class, taking into account the value of the injunctive relief.   Although injunctive relief does not lend itself to precise mathematical calculation, courts have often adopted the fair value of injunctive relief proposed by the parties when estimating the total value of settlements and the appropriate percentage thereof for attorneys' fees. *See McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 478 (D.N.J. 2008) (noting that "[t]he parties fairly valued the injunctive relief at between $26 and $38 million," and determined "that the requested attorneys' fee was reasonable"); *Sheppard v. Consol. Edison Co. of New York*, Case No. 94-cv-0403(JG), 2002 WL 2003206, at *7 (E.D.N.Y. Aug. 1, 2002) (considering the "estimated $5 million in non-monetary, injunctive relief part of the total settlement in evaluating the reasonable attorneys' fees").

With regard to injunctive relief, the key challenge is to assign a reasonably certain monetary value. *Staton v. Boeing*, 327 F.3d 938, 974 (9th Cir. 2003); *See also Fraley v. Facebook*, No. C 11-1726--RS, 2013 WL 4516806, at *3 (N.D. Cal. Aug 26, 2013), in which the

Court acknowledged that the presence of injunctive relief could be used to support an attorneys'
fee award at benchmark level or the reasonableness of the settlement.  Even where a court
declines to assign a numerical value to injunctive relief and add it to the total settlement fund,
courts often consider such relief as a relevant factor in determining that the percentage sought
represents a reasonable fee. *See, e.g., Pokorny v. Quixtar, Inc.*, Case No. C 07-0201 SC, 2013
WL 3790896, at *1 (N.D. Cal. July 18, 2013) (noting that "[t]he court may properly consider the
value of injunctive relief obtained as a result of settlement in determining the appropriate fee,"
and that because "the settlement contain[ed] substantial injunctive relief[,] . . . the injunctive
relief elements of the settlement constitute[d] further support for the reasonableness of the fee
award").

The settlement of this class action provides valuable injunctive relief to the Class. Class
Members are no longer exposed to allegedly deceptive and misleading marketing; they benefit
from the continued use of new and updated packaging and labeling; and benefit from Harmless
Harvest's promise that such labeling changes shall remain in effect, along with consultants who
will monitor future labels.  Because of this relief, Class Members (and future consumers of
Harmless Harvest) have the ability to make a more sound and informed decision when
purchasing Harmless Harvest's coconut water products.

Class Counsel believes that consumers have also benefitted from a price reduction caused
by the loss of pricing premium from the allegedly misleading labels.  As set forth above, Class
Counsel believes that Harmless Harvest has reduced the price of its products based on revised
labeling and that such price reduction reflects the pricing premium of Harmless Harvest's prior
labeling representations challenged in the Action, which were revised in 2015 and will remain

revised pursuant to the terms of the class settlement.   If so, Plaintiffs' counsel's work has provided a significant benefit to the class.

Even if the Court declines to assign a precise monetary value to the injunctive relief, it should still consider the injunctive relief obtained, in addition to the Class Counsel's lodestar, supporting the reasonableness of the request for attorneys' fees. The amount of the attorneys' fees awarded here will in no way impact the Class Members, because the Defendants have agreed to pay the attorneys' fees and expenses separate and apart from the injunctive relief provided by Defendants to the Class, the payment of administration fees, service awards and consultants fees. Courts in this Circuit have often noted that attorneys' fees that the defendants have agreed to pay directly to counsel are particularly reasonable in that such fees do not affect the Class Members' relief. *See, e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243-44 (E.D.N.Y. 2010).  Indeed, when the attorney's fee award in no way reduces the recovery to the class, "the danger of conflicts of interest between attorneys and class members is diminished." *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *15; *see also Jermyn v. Best Buy Stores, L.P.*, Case No. 08 CIV. 214 CM, 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012) (same); In re Sinus Buster Products Consumer Litig., Case No. 12-cv-2429 (ADS)(AKT), 2014 WL 5819921, at *14 (E.D.N.Y. Nov. 10, 2014).   Here, the requested attorneys' fees and expenses, will not diminish or affect the injunctive relief to Class Members.

**f.   Public Policy Considerations**

This settlement promotes the public policy of protecting consumers throughout the United States. The alleged violations of these consumer protection acts are precisely the type of conduct that is not likely to be addressed via individual lawsuits, but that are best resolved via a class action with far reaching and meaningful benefits to a large number of people, including injunctive relief that halts and/or prevents the wrongful conduct. This settlement, while providing

substantial injunctive relief to potentially millions of Class Members, provides relief that would likely never be obtained absent a class action, including labeling changes and price reduction in the products. Moreover, these benefits are available now, rather than after years of litigation as the labeling changes have already been made by Harmless Harvest. Thus, the public policy factors weigh in favor of approving Class Counsel's requested attorneys' fees and expenses. See *Jermyn,* 2012 WL 2505644, at \*12 (noting, in evaluating the public policy *Goldberger* factor, that Class Counsel's efforts improved the experience of consumers nationwide).

Further, the positive public policy impact of the settlement necessitates a lodestar multiplier. *See In re Nortel Networks Corp. Sec. Litig*, 539 F. 3d 129, 132 (2d Cir. 2008) (the district court found that a 2x multiplier properly balanced the policy goals of encouraging counsel to pursue meritorious litigations while protecting against excessive fees). Here, in light of the public policy impact, Class Counsel's request for fees of $555,000, which represent a 2.08x multiplier of their lodestar of $266,290.00, is fair and reasonable and should be approved. If however, the Court were to reduce the requested legal fees of Class Counsel, such difference would not even be applied to a *cy pres* donation, but rather, would solely benefit Defendant as any reduced fee amounts revert to Defendant under the Settlement Agreement. See Settlement Agreement at ¶10.3.4.

*        *        *

Each of the Goldberger factors favors approval of the requested attorneys' fees.

### ii.      *The requested expense reimbursements are also reasonable*

Although the contemplated attorneys' fees of $555,000 are inclusive of expenses, it should be noted that the expense reimbursement of $6,762.83, as of June 9, 2017, is also reasonable, as these are the types of expenses customarily charged in this type of litigation and were "incidental and necessary to the representation" *In re Independent Energy Holdings PLC*

24

*Sec. Litiq.*, 302 F. Supp. 2d 180, 183 (S.D.N.Y.2003); *see also In re China Sunergy Sec. Litig.*, No. 07-cv-7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011). Thus, it is appropriate to include the reasonableness of reimbursement of those expenses in the award of attorneys' fees and expenses requested.

### IV.    INCENTIVE AWARDS

Plaintiffs' requested incentive awards for each of the Named Plaintiffs are reasonable. "In a class action, plaintiffs can request an incentive award to compensate them for efforts expended for the benefit of the lawsuit." *In re Sinus Buster Products Consumer Litig.*, 2014 WL 5819921, at *19 (internal quotations omitted); *see also In re Colgate-Palmolive Co. Erisa Litig.*, 36 F. Supp. 3d at 354; *Beckman v. KeyBank, NA.*, 293 F.R.D. at 483 ("Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs").

Here, Plaintiffs' seek incentive awards in the amount of $5,000.00 for each of the four (4) Named Plaintiffs (totaling $20,000). Such awards are reasonable because each of the Plaintiffs served the Class by being the face of the settlement which became publicized on the internet in December 2016; by being available as needed to discuss the litigation with Class Counsel, and by reviewing and discussing the case with counsel periodically. *See In re Colgate-Palmolive Co. Erisa Litig.*, 36 F. Supp. 3d at 354 (providing a $5,000 incentive award for each of six named plaintiffs where those plaintiffs participated in the litigation, reviewed filings and "communicated regularly with Class Counsel"); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d at 245 (granting a $5,000 incentive award for a named plaintiff who "reviewed the complaint in the California Action and discussed the facts with counsel"); *Strougo ex rel. Brazilian Equity*

*Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 264 (S.D.N.Y. 2003) (awarding the class representative a $15,000 incentive award).

Given the efforts they expended for the benefit of this lawsuit, an incentive award of $5,000.00 for each of the Named Plaintiffs is reasonable, particularly in light of the fact that the awards will not reduce the benefits to the Class. *See Strougo ex rel. Brazilian Equity Fund, Inc.*, 258 F. Supp. 2d at 264 (approving the proposed incentive award where it would "not reduce the benefit to the shareholders or class").

## CONCLUSION

For the reasons set forth herein, Plaintiffs' request for attorneys' fees and reimbursement of costs and expenses in the amount of $555,000 is fair and reasonable. Plaintiffs' request that the Court grant incentive awards to Plaintiffs Guoliang Ma, Elizabeth Peguero, Sharon Manier and Kin Fai Lau, the Class representatives, in the amount of $5,000.00 per representative (for a total of $20,000), in recognition of their valuable service to the Class, is likewise fair and reasonable.

Respectfully submitted this 9th day of June 2017

By:  /s/ C.K. Lee
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
Taimur Alamgir (TA 9007)
Angela Kwon (AK 1396)
Lee Litigation Group, PLLC
30 East 39th Street, Second Floor
New York, New York 10016
Telephone:  212-465-1188
*Attorneys for Plaintiffs and the Class*