# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUOLIANG MA, ELIZABETH PEGUERO, SHARON MANIER, and KIN FAI LAU, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HARMLESS HARVEST, INC.,<br><br>Defendant.<br><br><br>ANNA ST. JOHN,<br><br>Objector. | No. 16-cv-7102 (JMA) (SIL) |

## DECLARATION OF ANNA ST. JOHN

Adam E. Schulman (*pro hac vice*)
COMPETITIVE ENTERPRISE INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1310 L Street NW, 7th Floor
Washington, DC 20005
Phone: (610) 457-0856
Email: adam.schulman@cei.org

*Attorney for Objector Anna St. John*

I, Anna St. John, declare as follows:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. I am an attorney with the non-profit Competitive Enterprise Institute's Center for Class Action Fairness ("CCAF" or the "Center"). My business address is 1301 L St. NW, 7th Floor, Washington, DC 20005. My email is anna.stjohn@cei.org. My telephone number is (917) 327-2392.

3. On September 29, 2017, I filed through my counsel and CCAF colleague, Adam Schulman, an objection to the proposed settlement in the above-captioned case. Dkt. 18. On October 20, 2017, plaintiffs filed their Response to the Objection of Anna St. John and Jason Bowerman (Dkt. 25) ("Plaintiffs' Response"). Plaintiffs' Response makes multiple statements of fact and law with respect to me, CCAF, and CCAF's founder Theodore H. Frank that are false, misleading, and lack evidentiary support in an attempt to pollute the record and distract the Court from the substantive defects in the proposed settlement. I submit this declaration to correct the record and avoid unfair prejudice resulting from Plaintiffs' Response.

## CCAF's Litigation History

4. I began working at CCAF in March 2015. (In October 2015, the Center merged with the non-profit Competitive Enterprise Institute.) Founded by Theodore H. Frank in 2009, CCAF litigates on behalf of class members, which it represents *pro bono* against unfair class action procedures and settlements. *See, e.g.*, *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (praising CCAF's work); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) (describing CCAF's client's objections as "numerous, detailed, and substantive."); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. 2013) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objectors in ascertaining the fairness of a settlement."); Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013, at A12 (calling CCAF's director "[t]he leading critic of abusive class-action settlements"). Since it was founded, CCAF has "recouped more than $100 million for class members" by driving the settling

parties to reach an improved bargain or by reducing outsized fee awards. Andrea Estes, *Critics hit law firms' bills after class-action lawsuits,* BOSTON GLOBE (Dec. 17, 2016); *see, e.g., In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013) (reducing fees by $26 million after CCAF objection).

5. In Plaintiffs' Response, plaintiffs mischaracterize CCAF "as an organization whose sole purpose and mission is to object to class action settlements" (Dkt. 25 at 1) and a "serial objector organization," with an "anti-class action agenda," "significant credibility issues," and a "central aim of reducing or eliminating fees to class action attorneys," having made "attempts to destroy beneficial class actions" (*id.* at 7-8). Plaintiffs further mischaracterize me personally as a "professional objector" who brought a "bad-faith objection." *Id.* at 1. They also falsely claim that "serial objector Anna St. John and her organization have a well-documented practice of bad faith product purchasing, ingratiating themselves into the technical definition of a 'class member,' and then filing frivolous objections that are designed to unreasonably and vexatiously multiply court proceedings, motivated by an improper purpose." *Id.* at 22.

6. These characterizations are false. As an initial matter, the difference between a so-called "professional objector" or a "bad-faith objector" and a public-interest objector is a material one. As the federal rules are currently set up, "professional objectors" have an incentive to file objections regardless of the merits of the settlement or the objection with the hope of extracting payment from the attorneys for personal gain. In contrast, a public-interest objector such as CCAF, and myself, has no interest in wasting limited resources and time on objections to legitimate settlements. Unlike bad faith objectors, neither CCAF nor I engage in *quid pro quo* settlements, extort attorneys, or has ever withdrawn an objection in exchange for payment. CCAF is funded entirely through charitable donations and court-awarded attorneys' fees. The Center very carefully screens its clients to ensure their good faith in objecting and, when possible, as here, uses Center attorneys or their spouses or board members who are class members to object. Consistent with these aims, and as the declaration I filed contemporaneously with my objection states, I am willing to stipulate to an injunction prohibiting myself from accepting compensation in exchange for the settlement of my objection.

7. As stated on the webpage that Plaintiffs' Response relies upon (*id.* at 1 n.1) and supported by the public record, CCAF's purpose extends beyond simply "object[ing] to class action settlements." Moreover, CCAF has no "anti-class action agenda" and no desire to "destroy beneficial class actions." The webpage itself describes CCAF's agenda as "represent[ing] class members against unfair class action procedures and settlements." CCAF's founder has frequently confirmed his support for the principles behind class actions in declarations under oath, interviews, essays, and public speeches, including a January 2014 presentation in New York that was broadcast nationally on C-SPAN and in a certiorari petition filed in 2015 in *Frank v. Poertner*. On multiple occasions, successful objections brought by CCAF have resulted in new class-action settlements where the defendants pay substantially more money to the plaintiff class without CCAF objecting to the revised settlement. As to the claim that CCAF's "sole purpose" is to object to class action settlements, that is belied by the public record. For example, CCAF in multiple cases has sought to recoup unjust gains procured by professional objectors that delayed the consummation of legitimate settlements. *See Pearson v. NBTY, Inc.,* No. 11-cv-7972 (N.D. Ill.), *appeal pending* No. 17-2275 (7th Cir.); *Rougvie v. Ascena Retail Group*, No. 15-cv-724, 2017 WL 2624544 (E.D. Pa. June 16, 2017).

8. The idea that CCAF has "significant credibility issues" is likewise belied by its public track record. CCAF has won the vast majority of its objections, including over a dozen federal appeals, winning tens of millions of dollars for class members in cases in which it has objected, and has received national acclaim from the press and courts. Moreover, plaintiffs' claim that a "central aim" of CCAF is "reducing or eliminating fees to class action attorneys" wrongly implies that CCAF attempts to eliminate all class action fees indiscriminately, when, in fact, it objects only to fees that are excessive.

9. Any suggestion that my objection is not made in good faith is not grounded in any evidence or investigation and is refuted by the public record and other evidence discussed herein, as well as by the very case cited in Plaintiffs' Response. *See* Dkt. 25 at 22 (citing *In re Polyurethane Foam Antitrust Litig.*, 165 F. Supp. 3d 664 (2015)). In *Polyurethane Foam*, the court said the following about CCAF: "IPPs assert that all the objectors (1) are serial objectors; (2) have improper motives; (3) plainly

misstate the facts; (4) offer boilerplate language they have presented to other courts unsuccessfully; (5) have suffered serious disciplinary proceedings; (6) make scurrilous, unfounded accusations (*e.g.*, perjury and fraud by IPP counsel); and/or (7) make extortionist threats. Except for the fact that objector CCAF has appeared and objected in numerous other class-action cases, these characterizations do *not* apply to CCAF—CCAF's objection is lucid and filed in good faith." 168 F. Supp. 3d 985, 998 (N.D. Ohio 2016) (emphasis in original).

10. Plaintiffs' Response misleadingly states about CCAF: "Hon. Kathleen M. O'Malley, Circuit Judge [sic] of the Northern District of Ohio, characterized the organization's objections as 'long on ideology and short on law.' *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 785 (N.D. Ohio 2010)." Dkt. 25 at 8. This is not an accurate characterization of *Lonardo*. *Lonardo* complained about a single *policy argument* against reversionary clauses in CCAF's brief, which forthrightly acknowledged it was raising an issue of first impression that was without precedent. CCAF ultimately was successful in the Seventh and Ninth Circuits on the single argument *Lonardo* criticized as supposedly "long on ideology and short on law." Even to the extent *Lonardo*'s characterization was correct in 2010, it is no longer correct after *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) and *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014), agreed with CCAF that reversionary clauses are a problematic sign of self-dealing. In fact, *Lonardo* praised Mr. Frank: "the Court is convinced that Mr. Frank's goals are policy-oriented as opposed to economic and self-serving." 706 F. Supp. 2d at 804. *Lonardo* awarded CCAF about $40,000 in attorneys' fees for increasing the class benefit by $2 million. *Id.* at 813-17.

11. Plaintiffs' citation to *City of Livonia Employees' Ret. Sys. v. Wyeth*, No. 07 Civ. 10329 (RJS), 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013), is also misleading. Dkt. 25 at 8. While the *Wyeth* court did criticize CCAF's client's objection (after mischaracterizing the nature of that objection), it ultimately agreed with the client that class counsel's fee request was too high, and reduced it by several million dollars to the benefit of the shareholder class members.

12. The statement in Plaintiffs' Response claiming that "CCAF's hypocrisy is particularly evident in its submission in a 2015 action seeking hourly rates of $2,865 and a 5.97x multiplier on their lodestar when they complain in the instant matter regarding the propriety of Class Counsel's fees" is false and misleading. Dkt. 25 at 8. As the record in the cited case shows, CCAF did not seek a lodestar-based award at all; rather, CCAF sought a percentage-based award and requested that the court apply the same percentage-of-recovery that class counsel in that case requested that the court use to calculate class counsel's fee award with respect to the multi-million dollar benefit that CCAF achieved for the class and, from that amount, award CCAF $90,000. *See In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. 3:07-cv-005634, Dkt. 1029 at 3-4 (N.D. Cal. June 29, 2015). CCAF's fee request for itself was in fact lower than the lodestar crosscheck. *Id.* at 6-8. CCAF requested that any additional amount that the Court determined it should be awarded be returned to the class settlement fund. Rather than exhibit "hypocrisy," *Transpacific* illustrates CCAF's mission of improving outcomes for class members.

13. Plaintiffs' Response also mischaracterizes *Rougie v. Ascena Retail Group, Inc.*, 2016 WL 4784121 (E.D. Pa. Sept. 12, 2016) as "rejecting objections to attorneys [sic] fees request." The cited *Rougvie* decision sustained in part CCAF's clients' objection to attorneys' fees.

### Mr. Frank's Legal Consulting Work

14. Plaintiffs' Response also makes the false claim that Mr. Frank "accept[ed] … side payments" and had "secret business dealings" that "forced" Mr. Frank "to admit that he had accepted $250,000 in side payments." Dkt. 25 at 7. These statements are false and contradicted by the exhibits plaintiffs rely upon. In his declaration attached as an exhibit to Plaintiffs' Response, with only certain pages selectively included, despite such declaration being publicly available on PACER, Mr. Frank describes in detail his former legal consulting work, in which he (i) performed primarily on an hourly-pay or flat-fee basis, providing over a thousand hours of legal work by Mr. Frank and his attorney subcontractors, (ii) after obtaining appropriate approvals, (iii) involving only objections that he believed to be meritorious, and (iv) through which his goal was to create favorable caselaw for class

members in which CCAF lacked a client or resources to participate. Mr. Frank voluntarily disassociated himself from the attorney who hired him for this work and provided full disclosure of these transactions to the Seventh Circuit at great personal financial expense when that attorney chose to create a conflict of interest with Mr. Frank's non-profit work; he was not "forced" to do so. In connection with this former legal consulting work, Mr. Frank made court appearances in two successful appeals and submitted declarations in multiple cases describing his payments and his work. There was nothing "secret" about these business dealings. Further, the use of the term "side payments" connotes a bribe or kickback; any allegation that Mr. Frank accepted such payments is flatly wrong. The payments were compensation for high-quality legal work that was successful in court. Plaintiffs' Response frivolously claims that Mr. Frank did something wrong because, as a private attorney, he accepted money from a paying client to win meritorious appeals.

**Class Membership**

15. Plaintiffs' Response claims that I have not "provided proof that … [I] had actually purchased the products at issue at all, or specifically, during the class period" and that I "may not actually be a Class member with standing to object as she has provided **no evidence** of her membership in the Class." Dkt. 25 at 1, 3 (emphasis in original). These statements are false. The declaration accompanying my objection constitutes competent evidence and meets the requirements that an objecting class member "attach documents establishing or provide information sufficient to allow the Parties to confirm that the objector is a Settlement Class Member." Dkt. 11 ¶ 12. Plaintiffs' Response seeks to impose upon me a more burdensome requirement than the Court approved for class members seeking to object. This tactic is particularly improper here, where virtually no consumer will have retained receipts, pictures, or the bar codes for low-dollar, disposable consumer items.

16. Plaintiffs' Response further asserts that my statement that I purchased the products at issue for "personal use" is "false." Dkt. 25 at 4. This statement is false and made without any evidentiary support. I purchased the product for personal consumption; that is definitive personal use, to be contrasted with any commercial, economic, resale or other non-personal use of the product. *See* U.S.

Customs and Border Protection, *Travelers bringing food into the U.S. for personal use*, https://help.cbp.gov/app/answers/detail/a_id/3619/~/travelers-bringing-food-into-the-u.s.-for-personal-use (contrasting personal use of food with resale use) (last visited Oct. 21, 2017).

### Response to Plaintiffs' Response

17. On October 23, 2017, Mr. Schulman sent (i) a letter detailing the portions of Plaintiffs' Response that were false, misleading, and lacking in evidentiary support, and (ii) a notice of motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure to Mr. Lee, Ms. Seelig, Ms. Kwon, and Mr. Alamgir—the four signatories to Plaintiffs' Response. *See* Dkt. 26. On October 26, 2017, Mr. Schulman asked the Court to shorten the 21-day "safe harbor" period provided by Rule 11 to enable me to file a motion for sanctions prior to the fairness hearing on November 3, 2017. Dkt. 26. Plaintiffs' counsel opposed this request and stated in a letter to the Court that I had "failed to serve Plaintiffs with any draft of the actual proposed Rule 11 motion," as "[t]he letter emailed by objector St. John's counsel structurally does not resemble a draft of a motion." Dkt. 27 at 2. I was copied on and received the email that Mr. Schulman sent to plaintiffs' counsel. He also copied defense counsel Mr. Wolinsky. It attached both the letter to plaintiffs' counsel (subsequently docketed as Exhibit A to ECF No. 26) and a motion for sanctions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 30, 2017, in New Orleans, LA.

*/s/ Anna St. John*
Anna St. John

## Certificate of Service

The undersigned certifies he electronically filed the foregoing Declaration via the ECF system for the Eastern District of New York, thus sending the Declaration in writing to the Clerk of the Court and also effecting service on all attorneys registered for electronic filing.

Dated: October 31, 2017.

Adam E. Schulman