# LEE LITIGATION GROUP, PLLC
30 EAST 39TH STREET, SECOND FLOOR
NEW YORK, NY 10016
TEL: 212-465-1180
FAX: 212-465-1181
INFO@LEELITIGATION.COM

WRITER'S DIRECT: 212-465-1188
cklee@leelitigation.com

November 17, 2017

**VIA ECF**
Hon. Joan M. Azrack, U.S.D.J.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

   Re: *Ma, et al. v. Harmless Harvest Inc.*
      Case No. 16-cv-7102

Dear Judge Azrack:

  We write in response to the letter of Adam E. Schulman, Esq., counsel to objector Anna St. John, addressed to the undersigned dated October 23, 2017 ("Objector's Rule 11 Safe Harbor Letter") (filed with the Court as ECF Dkt. 26, Exhibit A).

  Notwithstanding Plaintiffs' objections to the validity of service of the safe harbor letter, and without waiving any rights or claims, although Plaintiffs maintain that the statements made in Plaintiffs' Response to the Objections of Anna St. John and Jason Bowerman are neither false nor misleading, have a good faith basis, and are supported by evidence, to avoid any further time and legal fees to respond to a frivolous Rule 11 motion, Plaintiffs agree to withdraw and/or modify the subject statements, as detailed below[1].

  1. As to the reference in page 1[2] to Ms. St. John as a "professional objector," her objection as a "bad faith objection," and CCAF as "an organization whose sole purpose and mission is to object to class action settlements," such statements are modified as follows: (i) by professional objector, Plaintiffs refer to the fact that Ms. St. John is employed by an organization that objects to class action settlements, and that she routinely does so, and that she is paid by her employer for doing so. Plaintiffs do not intend the words "professional objector" to mean an objector that accepts payments for withdrawing objections; (ii) Plaintiffs modify "bad faith objection" to "<u>possible</u> bad faith objection", and (iii) Plaintiffs modify the statement as to CCAF to read "<u>an organization that, among other things, objects to class action settlements.</u>"

  2. As to the references in pages 1 and 3 claiming that Ms. St. John has not "provided proof that ...she actually purchased the products at issue at all, or specifically, during the class period" and "Objector Anna St. John may not actually be a Class member with standing to object

---

[1] We respond to objector St. John's allegations in the order in which they are set forth in Mr. Schulman's October 23, 2017 letter.

[2] The reference to pages refer to the page numbers of Plaintiffs' Response to the Objection of Anna St. John and Jason Bowerman (ECF Dkt. 25).

as she has provided no evidence of her membership in the Class," such statements are modified as follows: Ms. St. John has not "provided proof, <u>other than a declaration</u>, that…she actually purchased the products at issue during the class period <u>nor that the bottles she purchased contain the original labels with the purported misrepresentations, nor that she was actually deceived or relied on such misrepresentations in making the purchases</u>" and "Objector Anna St. John may not actually be a Class member with standing to object as she has provided no evidence, <u>other than a declaration</u>, of her membership in the Class. <u>In particular, she did not provide evidence, other than a declaration, that the bottles she purchased contained the original labels with the purported misrepresentations or that she was actually deceived or relied on such misrepresentations in making the purchases</u>."

3. As to the reference in page 4 that "although Ms. St. John alleges she purchased the products for 'personal use,' such allegation is false," such statement is modified to include the following: <u>by personal use, Plaintiffs do not allege Ms. St. John purchased the items for retail or resale use, but rather, Plaintiffs call into question Ms. St. John's intent in purchasing the products for the purpose to file an objection as a class member, and not simply for personal consumption and enjoyment</u>.

4. As to the references in pages 7 and 8 calling CCAF a "serial objector organization," imputing to CCAF an "anti-class action agenda," "significant credibility issues," a "central aim of reducing or eliminating fees to class action attorneys," and claiming CCAF has made "attempts to destroy beneficial class actions," such statements are maintained. <u>As noted by Objector St. John's counsel at the Final Fairness Hearing, Objector St. John did not look to the validity nor the riskiness of the underlying claim</u>. Such factor is directly correlated to the type of relief that class members may enjoy as part of a negotiated settlement. Given that witnesses are based in Thailand and would have challenges even entering the U.S., given the current political climate, to testify, for Objector St. John to object to the class settlement as unfair without any regard to the underlying risk of the claims is a disservice to the class that they seek to help.

Unlike the *Subway* case, where the plaintiff did not investigate the claims and only heard about it through a YouTube video, Plaintiffs' counsel here met with and interviewed coconut farmers, vendors and middlemen to investigate the "100% Organic" claims. Thereafter, Plaintiffs' counsel was able to obtain nationwide publicity regarding the deception, cause nationwide awareness regarding the misrepresentations, inform Defendant of the greenwashing issues for coconuts they source and implement a third party consultant to review Defendant's labeling and organic certification processes. Real value and service was provided to the class given the real risks and challenges that may arise from continued prosecution of the claims. Defendant has also alleged that a significant difference in pricing premium for its products relative to its competitive peers is due to its natural milky coconut taste, which tastes as if fresh out of a coconut, as opposed to other brands that taste unnatural and adulterated.

5. As to the references in page 7 to "Mr. Frank's acceptance of side payments," "secret business dealings" and the claim that "when secret business dealings with another professional objector resulted in legal action, Mr. Frank was forced to admit that he had accepted $250,000 in side payments," such statements are supported by Exhibits C, D, and E to Plaintiffs' Response to the Objections of Anna St. John and Jason Bowerman. Although Objector St. John attempts characterize such payments to Mr. Frank as "fees for successful attorney work done on

appeal," Exhibits C, D and E, which are already a part of the record, speak for themselves in detailing the nature of such payments.

6. As to the reference in page 8, "CCAF's hypocrisy is particularly evident in its submission in a 2015 action seeking hourly rates of $2,865 and a 5.97x multiplier on their lodestar when they complain in the instant matter regarding the propriety of Class Counsel's fees," Plaintiffs agree to add a footnote stating <u>"in the referenced case, CCAF sought a percentage-based award with a lodestar cross-check."</u>

7. As to the reference in page 9 describing *Rougvie* as "rejecting objections to attorneys fees request," such statement is modified to be "rejecting <u>in part</u>, objections to attorneys fees request."

8. As to the references to statements made in pages 22 and 23 "serial objector Anna St. John and her organization have a well-documented practice of bad faith product purchasing, ingratiating themselves into the technical definition of a 'class member,' and then filing frivolous objections that are designed to unreasonably and vexatiously multiply court proceedings, motivated by an improper purpose" such statements are retracted. As the Court has already indicated during the final approval hearing that it did not want to hear about "sanctions," the request for imposition of sanctions against Ms. St. John is, similarly, withdrawn.

9. As to the page 23 request for the Court to impose an appeal bond, Plaintiffs do not believe withdrawal or modification of such request is necessary. The Court may, either at Plaintiffs' request or *sua s-ponte,* impose such a bond, at this stage or later, should the settlement be approved and Objector St. John file an appeal. Although Objector St. John feels such request is "premature," there is no Rule 11 violation in seeking such a bond.

We trust the foregoing retractions and modifications will satisfy objector St. John.

Respectfully,

*/s/ C.K. Lee*

cc: all parties via ECF