UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                                    For Online Publication Only
------------------------------------------------------------X
GUOLIANG MA, ELIZABETH PEGUERO,
SHARON MANIER, and KIN FAI LAU,
on behalf of themselves and others similarly
situated,

                              Plaintiffs,


          -against-                                            **MEMORANDUM & ORDER**
                                                                16-CV-07102 (JMA) (SIL)


HARMLESS HARVEST, INC.

                              Defendant.
------------------------------------------------------------X
APPEARANCES:

          C.K. Lee
          Anne Seelig
          Angela Saeyun Kwon
          Taimur Alamgir
          Lee Litigation Group, PLLC
          30 East 39th Street, 2nd Floor
          New York, NY 10016
                    *Attorneys for Plaintiffs*

          Robert Wolinsky
          Hogan Lovells US LLP
          555 13th Street NW
          Washington, DC 20004
                    *Attorney for Defendant*

          Adam E. Schulman
          Competitive Enterprise Institute Center for Class Action Fairness
          1310 L St NW, 7th Floor
          Washington, DC 20005
                    *Attorney for Objector Anna St. John*

1

**AZRACK, United States District Judge:**

Before the Court is plaintiffs' Motion for Final Approval of Class Action Settlement ("Final Approval Motion") as well as plaintiffs' Motion for Attorneys' Fees, Service Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees").  For the reasons set forth herein, plaintiffs' motions are denied.

## I.  BACKGROUND

### A.  The Parties and the Putative Class Action Complaint

On December 23, 2016, plaintiffs Guoliang Ma, Elizabeth Peguero, Sharon Manier, and Kin Fai Lau ("plaintiffs") filed a putative class action complaint against defendant on behalf of themselves, and all others similarly situated, against defendant Harmless Harvest, Inc. ("Harmless Harvest"), a Delaware Corporation, with its principal place of business in San Francisco, California.  (See Compl. ¶ 29.)

Prior to filing the complaint, plaintiffs' counsel sent pre-litigation demand letters to Harmless Harvest on November 17, 2015 and January 29, 2016, along with a draft of the complaint.  (Declaration of C.K. Lee in Support of Plaintiffs' Unopposed Motion for Preliminary Settlement Approval ("12/7/16 Lee Decl.") ¶ 9-10, ECF No. 7.)  After plaintiffs sent defendant the pre-litigation demand letters, the parties scheduled a mediation session for June 7, 2016 in San Francisco with a JAMS mediator.  (Id. ¶ 12.)  Although the parties were unable to settle during mediation, they eventually reached a class settlement, which they signed on December 23, 2016, the same day the complaint was filed.  (Id. ¶ 16.)

Defendant is owner of the "Harmless Harvest®" brand and imports, advertises and sells coconut water products in the United States.  Additionally, by and through its majority-owned subsidiary in Thailand, Harmless Harvest (Thailand), Co. Ltd., defendant also manufactures

2

coconut water products in Thailand and exports coconut water products from Thailand to the United States.  (Id. ¶ 29.)

Plaintiffs allege that defendant engaged in a false and misleading labeling, packaging and marketing campaign by labeling, packaging and advertising its coconut water products as "100% ORGANIC" and "USDA ORGANIC" and "100% RAW" even though defendant knew that at least a significant portion of defendant's coconut supply was neither 100% organic nor USDA-certified organic, and that the coconut water products were not 100% raw and lacked the traditional characteristics and qualities associated with raw products.[1]  (Id. ¶¶ 8-12.)  For example, plaintiffs specifically allege that defendant purposefully and knowingly:

(i) purchased coconuts from coconut plantations that have no organic certification;

(ii) purchased coconuts from street vendors whose source of supply is unknown;

(iii) purchased "green-washed" coconuts from "brokers" who would certify that the coconuts are organic even though they are not;

(iv) caused farmers to sign a "Farmer's Agreement" promising to use organic farming techniques without testing soil sample; and

(v) conspired with the organic certifier Bioagricert in obtaining fraudulent organic certification.

(Id. ¶ 11.)

Plaintiffs further allege that as a result of defendant's false and misleading labeling, packaging and marketing campaign, defendant was able to sell its coconut water products to hundreds of thousands of consumers at premium prices and to realize sizeable profits in violation

---

[1] According to the complaint, the products at issue included the following ten Harmless Harvest products: Harmless Harvest® 100% Raw Coconut Water, 8 fl. oz. and 16 fl. oz.; Harmless Coconut® Water, 8 fl. oz. and 16 fl. oz.; Harmless Harvest® 100% Raw Coconut Water – Dark Cacao, 8 fl. oz. and16 fl. oz.; Harmless Harvest® 100% Raw Coconut Water – Cinnamon & Clove, 8 fl. oz. and 16 fl. oz.; Harmless Harvest® 100% Raw Coconut Water – Fair Trade Coffee, 8 fl. oz. and 16 fl. oz.  (Compl. ¶ 9.)

of laws of the fifty states and District of Columbia designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. (Id. ¶¶ 10, 16-18).

Defendant appears to have voluntarily removed the "raw" and "100% Organic" labels at issue prior to the filing of the complaint. Defendant appears to have removed the "raw" label around the summer of 2015, prior to plaintiffs' pre-litigation demand letters, and removed the "100% Organic" label after plaintiffs' counsel sent the initial pre-litigation demand letter to defendant on November 17, 2015. (Fairness Hearing Tr. at 19:20-20:23; 21:8-10.)

**B.  Settlement Agreement and Motion for Preliminary Settlement Approval**

On December 27, 2016, four days after filing their complaint, plaintiffs filed their Unopposed Motion for Preliminary Settlement Approval (the "Preliminary Approval Motion", ECF. No. 5), a proposed notice program, along with the parties' proposed settlement agreement (12/7/16 Lee Decl., Ex. A, Settlement Agreement and General Release (the "Settlement Agreement" or "Agreement"), ECF No. 7-1).)

The Settlement Agreement provides for a general release on behalf of the plaintiffs and settlement class members of all claims—whether brought "directly by or on behalf of any Settlement Class Member in an individual or class action"—broadly related to the issues encompassed by the claims in the action. The released claims include, but are not limited to, claims relating to any raw materials used in the manufacture of the products at issue; "raw" or "organic" labeling, packaging and advertising; organic certification with respect to the products at issue; the organic or raw manufacturing process; and compliance with regulatory requirements for organic products. (Settlement Agreement ¶ 8.1.) Released claims include ones that have accrued and which may accrue in the future. (Id.)

4

The Agreement provides in relevant part that as consideration for this broad release, Harmless Harvest "represents that it has removed all 'raw' and '100% Organic' labels from the packaging of products shipped into the United States and agrees that such labeling changes will remain in effect after the Effective Date." (Id. ¶ 5.1.) Harmless Harvest vigorously denies all of plaintiffs' claims and allegations of wrongdoing. (Id. ¶ 1.8.)

Further, the Settlement Agreement provides that an independent third party "consultant" from Wolf DiMatteo & Associates, P.O. Box 458, New Castle, Virginia, 24127, shall review coconut water labels for ongoing accuracy and provide reports as to the accuracy of the labels (including copies of such labels) to class counsel. (Id. ¶ 5.4.) The consultant would further be required to review "for a period of 2 years . . . organic certifications for the Products issued on or after the Effective Date [of the Agreement], which shall be maintained in a secure, password-protected database that is owned, maintained, and controlled by Harmless Harvest." (Id. ¶ 5.5.)

The Settlement Agreement provides for $575,000 in attorneys' fees, expenses, costs, and incentive awards (the "Fee Award"), which includes a $20,000 incentive award for the named Plaintiffs. (Id. ¶ 10.1.) The Agreement also provides that the Court may reduce the Fee Award in its discretion. (Id.)

The Agreement further includes a "clear sailing" provision, which provides that defendant consents not to challenge the Fee Award, (id.), as well as a "reversion" (or a "kicker") provision whereby class counsel's fee fund is segregated from any class benefit, such that any unawarded fees would revert back to defendant. (Id. ¶ 10.3.4.)

The Settlement Agreement also provided for a Notice Administrator to administer the settlement for a fee not to exceed $350,000 to be borne by defendant. The Notice Administrator was responsible for distributing the class notice to settlement class members, answering settlement

class member inquiries, along with other administrative tasks.  (Id. ¶ 6.1.)  The Notice Program provided for a nationwide publication notice program, a settlement website, and a toll-free number for calls relating to the Settlement.  (Id. ¶ 7.)

On May 12, 2017, the Court issued an Order:  (1) granting preliminary approval of the settlement; (2) conditionally certifying a Fed. R. Civ. P. 23 settlement class, "consisting of all persons in the United States who made retail purchases of the Products for personal use only during the period from September 30, 2011, to and including May 12, 2017"; (3) preliminarily appointing plaintiffs as representatives of the settlement class, and C.K. Lee, Esq., and Lee Litigation Group, PLLC as settlement class counsel; and (4) approving the class notice plan and setting a date for the fairness hearing.  (Preliminary Approval Order, ECF. No. 11.)

## C.  Objections, Motion for Final Approval and Fairness Hearing

By the end of the notice period, one class member opted out of, and two individuals objected to the Settlement Agreement.  (Declaration of C.K. Lee in Support of Plaintiffs' Motion for Final Approval ("10/20/17 Lee Decl."), Ex. A, Declaration of Cameron R. Azari, Esq.).  On September 29, 2017, a timely objection was filed by the Competitive Enterprise Institute Center for Class Action Fairness ("CCAF") on behalf of Anna St. John.  ("St. John Objection", ECF No. 18.)  A second, timely pro se objection was filed by Jason Bowerman on October 2, 2017.[2] ("Bowerman Objection", ECF. No. 20.)

Bowerman objects to the Settlement because it "provides no financial compensation to all of the class members that were misled due to false advertising."  (Bowerman Objection at 1.)

---

[2]As discussed further below, the Court is rejecting the Settlement Agreement and could do so sua sponte, even if no parties objected.  It is, therefore, unnecessary to address:  (1) every argument raised by the two objectors; and (2) whether the objectors have standing.  In any event, contrary to plaintiffs' argument, it appears that St. John has standing to bring her objections.  (See Declaration of Anna St. John, ECF No. 18-1.)

CCAF argues in the St. John Objection that: (1) this settlement class should not be certified; (2) the Agreement is not fair, adequate, and reasonable; and (3) plaintiffs' counsel's fees should be reduced in the event the Court certifies the class and approves the Settlement Agreement. Specifically, CCAF argues that the Settlement flouts Fed. R. Civ. P. 23(b)(2), which provides for class certification where "final injunctive relief . . .is appropriate respecting the class as a whole," because injunctive relief does not befit the class, which is defined as past purchasers, and because defendant had already removed the offending labeling prior to the Settlement Agreement.  CCAF also stresses that the Agreement provides no benefits to the class while allocating the entirety of the settlement proceeds to class counsel and the named representatives.  According to CCAF, these deficiencies preclude certification and final approval under Fed. R. Civ. P. 23(a)(4) and (g)(4), which require the representative parties and counsel to "fairly and adequately protect the interest of the class," and Fed. R. Civ. P. 23(e)(2), which requires the settlement agreement to be "fair, reasonable, and adequate," because the agreement waives "class members' claims while allocating the entirety of the settlement proceeds to class counsel and the named representatives."  (St. John Objection at 5-11, 16-25.)  CCAF also  argues that this suit does not present a "case or controversy" within the meaning of Article III because plaintiffs and defendant had already reached a settlement prior to plaintiffs filing their complaint and therefore had the same interest in the lawsuit from the moment of filing.  (Id. at 11-15.)

Plaintiffs filed their reply in opposition to the objections, (ECF. No. 25), as well as their Final Approval Motion, (ECF No. 22), on October 20, 2017, having previously filed their Motion for Attorneys' Fees on June 9, 2017.  (ECF No. 14.)

A fairness hearing (the "Fairness Hearing") was held by the Court on November 3, 2017 at which CCAF, plaintiffs' counsel and defendant's counsel were present and the Court heard argument.

## II.    DISCUSSION

Pursuant to Federal Rule of Civil Procedure 23(e), "the settlement of a class action must be approved by the district court."  In re Sony Corp. SXRD, 448 Fed. Appx. 85, 86 (2d Cir. 2011); Fed. R. Civ. P. 23(e).  A court may approve the class-action settlement only if it determines that the settlement is "fair, adequate, and reasonable, and not a product of collusion."  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116-17 (2d Cir. 2005) (citation omitted).  Proponents of a settlement agreement bear the burden of establishing the fairness of the settlement.  In re Am. Exp. Anti-Steering Rules Antitrust Litig., 2015 WL 4645240, at *10 (E.D.N.Y. Aug. 4, 2015).

In making this determination, the Court's "primary concern is with the substantive terms of the settlement" and, thus, the Court "need[s] to compare the terms of the compromise with the likely rewards of litigation."  Polar Int'l Brokerage Corp. v. Reeve, 187 F.R.D. 108, 112 (S.D.N.Y. 1999) (quoting Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)).

A court determines whether the settlement is fair "by looking at both the settlement's terms and the negotiating process leading to settlement."  Id. at 116.  In doing so, the court "review[s] the settlement for both procedural and substantive fairness."  In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (citing Wal-Mart, 396 F.3d at 116).

Additionally, when a settlement class is certified after a settlement has already been reached, "district judges . . . are bound to scrutinize the fairness of the settlement agreement with even more than the usual care."  Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982).  Courts have long recognized the dangers of early settlements and the settlement class device.  "An early

settlement will find the court and class counsel less informed than if substantial discovery had occurred. As a result, the court will find it more difficult to assess the strengths and weaknesses of the parties' claims and defenses, determine the appropriate membership of the class, and consider how class members will benefit from settlement." Polar, 187 F.R.D. at 113 (citations and quotation marks omitted).

In addition, "settlement classes create especially lucrative opportunities for putative class attorneys to generate fees for themselves without any effective monitoring by class members who have not yet been apprised of the pendency of the action." In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 788 (3d Cir. 1995). "Pre-certification negotiations also hamper a court's ability to review the true value of the settlement or the legal services after the fact." Id. In the settlement class context, courts "demand a clearer showing of a settlement's fairness, reasonableness and adequacy and the propriety of the negotiations leading to it." Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982).

Furthermore, the Settlement Agreement's "clear-sailing" and "reversion" clauses require heightened scrutiny by the Court. In addition to the disproportionate allocation of the settlement, these provisions may constitute "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011).

## A. Substantive Fairness

To determine whether a class settlement is substantively fair, courts in this circuit must consider the "fairness, adequacy, and reasonableness of a class settlement according to the 'Grinnell factors.'" Wal-Mart, 396 F.3d at 117. The Grinnell factors are:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed;

9

(4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Id. (citing City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974)).   As further elaborated below, the Court's primary basis for rejecting the settlement is that the injunctive relief provided by the settlement agreement offers little to no meaningful value to the class.  The Court has also considered each of each of the Grinnell factors as set forth below.

### 1.  Complexity, Expense, and Likely Duration of the Litigation

As the case is still at the early stages of litigation, with no responsive pleading, no motion practice, and little to no formal discovery, it appears clear that continued litigation would likely result in substantial time and expense to the parties.

### 2.  Reaction of the Class to the Settlement

At the end of the notice period, only one class member submitted a request for exclusion and only two class members objected to the settlement.  However, the lack of substantial opposition is not dispositive.  "In assessing a settlement, the court's duty is to protect absent class members, and thus it must reject a settlement it determines to be inadequate or unfair even if class members have not submitted any significant opposition." Polar, 187 F.R.D. at 113-14 (citing Martens v. Smith Barney, Inc., 181 F.R.D. 243, 263 (S.D.N.Y. 1998)).  Moreover, the Court notes that CCAF, which has disclaimed the Settlement Agreement, has submitted lengthy and substantive objections.

### 3.  Stage of Proceedings and Amount of Discovery

In considering the third Grinnell factor, courts "focus[ ] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy

of any settlement proposal." <u>Fleisher v. Phoenix Life Ins. Co.</u>, No. 11-CV-8405, 2015 WL 10847814, at *7 (S.D.N.Y. Sept. 9, 2015) (internal citations and quotation marks omitted).

Plaintiffs' counsel concedes that the action "is in an early stage of litigation," but contends that they have traveled to Bangkok, Thailand to conduct on-site investigations regarding the claims, and reviewed "[d]etailed sales and pricing information produced by defendant prior to the mediation, so they were well informed of the scope of the proposed class and the magnitude of the potential damages before negotiating."  (Final Approval Motion at 15.)  The Court also notes, however, that no formal pre-trial discovery has been conducted in this case, as the parties filed their Settlement Agreement days after plaintiffs filed their complaint, and the defendant has not filed any responsive pleading.

### 4. Risk of Establishing Liability and Damages and Maintaining the Class Action through Trial

With respect to risk of establishing liability and damages and maintaining the class action through trial, plaintiffs' counsel has represented:

> If the settlement is not consummated, Harmless Harvest has represented that it will raise numerous defenses and legal challenges to certification, the underlying merits of Plaintiffs' claims, and attempts to demonstrate damages. Moreover, the risk of litigation here is substantial, as the Plaintiffs would first have to overcome Harmless Harvest's dispositive motions and would then face the difficult tasks of obtaining class certification and proving liability and damages at trial via complex scientific evidence and dueling expert testimony, after having conducted extensive and costly discovery both in the United States and overseas in Thailand. At minimum, it is likely that proving the quantum of damages would prove difficult and expensive, and ripen into a "battle of experts."

(Final Approval Motion at 14.)  The Court notes that plaintiffs' counsel have provided few specifics and no evidence concerning these factors.

### 6. Ability of Defendant to Withstand a Greater Judgment

Plaintiffs' counsel argued at the Fairness Hearing that it would be difficult to enforce a judgment against defendant because most of defendant's assets are overseas, and that the defendant has an "inability to pay issue."     (Fairness Hearing Tr. 25.)  However, plaintiffs' counsel has offered no evidence to support these contentions, including in plaintiffs' Final Approval Motion.

### 7. Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

The Court finds that the settlement is virtually worthless, and declines to find that its terms are fair, reasonable and adequate, notwithstanding any consideration regarding the risks of litigation in light of the best possible recovery.  The Settlement Agreement gives preferential treatment to the named plaintiffs and class counsel, while providing virtually nothing of value for the class.  See In re Subway Footlong Sandwich Mktg. & Sales Practices Litig., 869 F.3d 551, 553 (7th Cir. 2017) ("A class action that seeks only worthless benefits for the class and yields only fees for class counsel is no better than a racket and should be dismissed out of hand.") (internal citations and quotation marks omitted); In re Dry Max Pampers Litig., 724 F.3d 713, 717-18 (6th Cir. 2013) ("In evaluating the fairness of a settlement, therefore, we look in part to whether the settlement gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members.  Such inequities in treatment make a settlement unfair.  The same is true of a settlement that gives preferential treatment to class counsel; for class counsel are no more entitled to disregard their fiduciary responsibilities than class representatives are.") (internal citations and quotation marks omitted); Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) ("courts must be particularly vigilant" for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.").

Here, the Settlement Agreement provides for a $555,000 fee award to class counsel as well as a $20,000 incentive fee to be divided among the named plaintiffs, but offers injunctive relief

that is worth little, if anything, to the class.  (Settlement Agreement ¶ 10.1.)  The Agreement states that Harmless Harvest represents that it has removed the "raw" and "100% Organic" labels from the packaging of products shipped into the United States, and agrees that such changes will remain in effect.  (Settlement Agreement ¶ 5.1.)  Further, the Agreement provides for the retention of an independent third party consultant for a period of two years to review the labels for ongoing accuracy and the organic certifications for the relevant products.  In exchange, the Agreement provides for a broad general release of all past and future individual and class claims on behalf of the plaintiffs and settlement class members relating to the subject matter of the claims at issue, including claims "that arise out of or relate in any way to any raw materials used in the manufacture" of the products at issue, which appears to cover all claims relating to coconuts and coconut water.  (Settlement Agreement ¶ 8.1(c).)

As the parties concede, Harmless Harvest removed the "raw" and "100% Organic" labels voluntarily prior to the filing of the complaint or the execution of the Settlement Agreement.[3]  In fact, the "raw" label appears to have been removed prior to any of plaintiffs' pre-litigation demand letters.[4]  Plaintiff has not shown that there is any risk or likelihood of Harmless Harvest reintroducing the labels.  Not only have plaintiffs offered no evidence on this point, but when asked about this prospect at the Fairness Hearing, plaintiffs' counsel simply responded, "Well, I'm not saying that they may or they would intend to [reinstate the labels] but it's a right that they no longer have."  (Fairness Hearing Tr. 21:2-3.)

---

[3]See 10/20/17 Lee Decl.  Harmless Harvest changed the "raw" label around the summer of 2015.  (See Fairness Hearing Tr. 21:8-10.)  According to defense counsel's representations at the fairness hearing, Harmless Harvest changed the "100% Organic" label after plaintiffs' counsel sent the initial demand letter to defense counsel, on November 17, 2015.  As defendant does not acknowledge wrongdoing or liability, defense counsel represented the change "was done for a variety of reasons."  (Fairness Hearing Tr.19:20-20:23.)

[4]See St. John Objection at 2.

Although plaintiffs' counsel emphasizes that the settlement provides "substantial injunctive" relief, (10/20/17 Lee Decl. ¶ 7), the Court disagrees. The purported injunctive relief does not require Harmless Harvest to do anything it had not already voluntarily decided to do, and there is no showing that absent the Settlement Agreement, it would seek to reintroduce the labels in the future. See Koby v. ARS Nat'l Servs., Inc., 846 F.3d 1071, 1080 (9th Cir. 2017) (finding the injunctive relief had no real value as it did not "obligate [defendant] to do anything it was not already doing," but still required absent class members to relinquish their rights for damages claims against defendant as part of a class action).

Making matters worse is that in exchange for worthless injunctive relief, class members are required to relinquish their individual and class claims relating not only to the claims at issue, but also to claims arising out of and relating to "raw materials" used by Harmless Harvest in the products at issue. See Polar, 187 F.R.D. at 114 (finding the settlement not fair to the class "because they will receive nothing of value" and that "class members are better off retaining their legal rights to maintain suit rather than accepting the settlement.").

The Agreement also provides for the hiring of a third party consultant for a period of two years to monitor compliance with the Agreement and defendant's organic certification. The Court is not persuaded that adding an employee to Harmless Harvest's payroll to monitor compliance with measures Harmless Harvest has already decided to take, affords any meaningful value to the class.

Thus, the class is receiving nearly valueless injunctive relief in exchange for a broad release, while class counsel and class representatives are receiving the only benefit from the Settlement Agreement. See Subway, 869 F.3d at 557 (finding the injunctive relief as "utterly worthless. The settlement enriches only class counsel and, to a lesser degree, the class

representatives."); Pampers, 724 F.3d at 715 (finding that the "settlement gives preferential treatment to class counsel while only perfunctory relief to unnamed class members.") (internal citations and quotation marks omitted).[5]

In light of all of the points above, the Court does not find that the Settlement Agreement is substantively fair.

## B. Procedural Fairness

To find a settlement procedurally fair, the Court "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel. . . possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." McReynolds v. Richards-Cantave, 588 F.3d 790, 804 (2d Cir. 2009) (citation omitted).  A class settlement is presumptively fair, adequate, and reasonable if it is the result of "arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart, 396 F.3d at 117 (citation omitted); see also Malchman, 706 F.2d at 433 (a court must examine "the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves").

Plaintiffs' counsel has appeared before this Court on numerous occasions and the Court does not doubt counsel's qualifications and experience in litigating class actions.  However, the Court is concerned about whether plaintiffs' counsel has adequately represented the class in this matter given, inter alia, the inequitably allocated terms of the Settlement Agreement, in which

---

[5]After the Court expressed its concern at the fairness hearing that the injunctive relief was worthless because the Court could not imagine a scenario in which Harmless Harvest would revert back to its original labels, plaintiffs' counsel offered to change the terms of the Settlement Agreement so that any reduction in the fee and service awards would go to a cy pres fund, rather than revert to defendant.  (See Fairness Hearing Tr. 22:7-15 ("[S]omething that may facilitate the settlement . . . in the event that the Court were to reduce my fees for any amount or reduce a service award for any amount, that the amount instead of reverting back [to the defendant] be put into a cy pres fund.").)  The Court is not persuaded by plaintiffs' counsel's belated attempt to salvage their fees from this settlement.

class counsel and named plaintiffs are receiving the totality of the economic benefit with the class essentially receiving meaningless injunctive relief in exchange for a broad release of past and future claims.  See Polar, 187 F.R.D. at 119-20; Gen. Motors, 55 F.3d at 803.

The Court also notes that other decisions by plaintiffs' counsel have been questionable and suggest that the class has not been adequately represented.  For example, following the preliminary approval of the class and Settlement Agreement, plaintiffs' counsel has sought to change the definition of the class, suggesting a recognition of the flaws in the Settlement Agreement and a willingness to avoid scrutiny, possibly at the expense of the interests of the class.  (See supra note 5.) [6]

In an attempt to exclude St. John as an objector, plaintiffs' counsel proposed that the Court "limit[] the Class period to products purchased on or before the date that Plaintiff filed for preliminary approval, December 27, 2016, rather than the date the Court entered the preliminary approval Order, (May 12, 2017)."  (Plaintiffs' Response to Objections at 6.)  Notably, plaintiffs' counsel has not offered a principled basis to limit class period in this fashion.  Moreover, even if plaintiffs' counsel were correct that the original class period was overbroad, plaintiffs' counsel's agreement to an overbroad class period does not reflect well on plaintiffs' counsel and undermines their claims that they are adequately representing the interests of class.[7]

---

[6] In addition, although plaintiffs' counsel has ultimately conceded that the labeling changes at issue were made prior to the filing of the Settlement Agreement, counsel has been less than frank on this point in their filings, which, at times, misleadingly indicate that the labeling changes were pursuant to the Settlement Agreement. (See Plaintiffs' Mem. in Support of Preliminary Approval Motion at 1 ("The Settlement provides to the Class solely injunctive relief in the form of labeling changes…"); id. at 10 ("Under the terms of the Settlement, Defendant agrees to substantial injunctive provisions that remove the labeling and advertising at issue."); see also Plaintiffs' Mem. in Support of Final Approval Motion at 1 ("The Overall Settlement includes important injunctive relief including label changes to Harmless Harvest's coconut water products."); id. at 6 ("As part of the Settlement, in addition to removing the allegedly deceptive representations on its product labeling, the Parties have agreed that Harmless Harvest will engage [a third party consultant].").)

[7] At the Fairness Hearing, plaintiffs' counsel suggested that St. John, who purchased the product after preliminary approval was granted, could not have "bought any of the bottles [with allegedly misleading labeling] which are the

In light of the discussion above, the Court' concerns about the procedural fairness of the settlement weigh against approval.

After considering both substantive and procedural fairness, the Court rejects the settlement because it is not fair, reasonable or adequate, and because the Court is not satisfied the class has received adequate representation.[8]

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that plaintiffs' Final Approval Motion is DENIED; **and it is further ORDERED** that plaintiff's Motion for Attorneys' Fees is DENIED.

**SO ORDERED.**

Date: March 31, 2018
Central Islip, New York

                                             _____/s/ (JMA)_____
                                             Joan M. Azrack
                                             United States District Judge

---

subject of the litigation." (Fairness Hearing Tr. at 24.) If this statement were correct, it begs the question of why the class period covers consumers who could have not possibly purchased the allegedly offending bottles at issue in this litigation. Moreover, plaintiffs' counsel's statement at the fairness hearing appears to be simply incorrect as the Settlement Agreement allowed defendant to sell off all of the allegedly offending bottles in its inventory. (Settlement Agreement ¶ 5.1.)

[8] In certifying a class action for settlement, the Court must ensure that the requirements of Rule 23(a) and (b) of the Federal Rules of Civil Procedure have been met. Denney v. Deutsche Bank AG, 443 F.3d 253, 270 (2d Cir. 2006). The Court previously preliminarily certified the class for the purpose of settlement. (See Preliminary Approval Order.) In light of the Court's rejection of the Settlement Agreement, the Court declines to reach the issue of class certification. In addition, plaintiffs seek certification of the class under Rule 23(b)(2). Without reaching the issue, the Court questions whether (b)(2) certification is appropriate as to this class, as defendant has already removed the offending labeling, and the class is defined as past purchasers of the product. See In re Scotts EZ Seed Litig., 304 F.R.D. 397, 408 (S.D.N.Y. 2015) (declining to certify class under Rule 23(b)(2) as the labels at issue had already been removed from defendant's packaging).